ELIZABETH SCHAAF, Administrator of J. G. SCHAAF, Deceased, Respondent, v. OSCAR R. FRIES et al., Appellant.

St. Louis Court of Appeals, December 13, 1898.

1. **Sale of Stock Held as Collateral.** Pledgee was bound to exercise good faith in making the sale; that is, was in duty bound to make reasonable efforts to cause the property to bring its value, or all that it would fetch in the market.

2. ———: INSTRUCTION: AFFIRMATIVE DEFENSES. Where an instruction assumes to state all the facts necessary to a recovery, it ought to direct the attention of the jury to all affirmative defenses of which there is any substantial proof.

3. **Expert Testimony.** Testimony as to the value of property, whether delivered by expert or nonexpert witnesses, must be based on adequate knowledge of the thing, and a knowledge of the state of the market.

4. **Privileged Communications:** ATTORNEYS. The general rule which excludes communications between attorney and client does not extend to the protection of matter communicated, not in its nature private, or which can not properly be termed the subject of a confidential disclosure.

*Appeal from the St. Louis City Circuit Court.*—HON. HORATIO D. WOOD, Judge.

REVERSED AND REMANDED.

W. M. KINSEY for respondent.

The pledgee is in effect a trustee for the pledgor. While the property is in his possession he should treat it

as trust property. Jones on Pledges, sec. 405; Union Trust Co. v. Rigdon, 93 Ills. 458. No matter to what extent the powers of the pledgee in the sale of the pledge may be enlarged by contract, still his duty to act in good faith and to treat the pledge in his hands as trust property in which the pledgor has a right to the surplus, if any, arising after a sale made in good faith, and for the best price which the pledgee can obtain, continues and is imposed upon him by the law throughout all his dealings with the pledge. The extraordinary powers of sale conferred upon appellant, Theresa Fries, by the collateral note did not confer upon her the right to confiscate the pledge. On the contrary the proper construction of such a contract is that such powers are granted in the interest of both parties in order that the pledge may be disposed of in any one of the ways pointed out, which at the time of sale will afford the best means of realizing the most money for it. It is admitted by the pleadings that the stock was fully paid and of the par value of $100 per share. It is alleged in the petition that the fifty-nine shares in question were worth $4,800 or $81 per share. The stock had no market value, and the burden was on appellants to show that the shares were worth less. Trust Co. v. Home Lumber Co., 118 Mo. 448; Moffit v. Hereford, 132 Mo. 513. The judgment as finally is on the basis of a valuation of $66.50 per share. Evidence of the fact that no notice of the intended sale of the stock was given to, or demand of payment made of any person interested in the Schaaf estate, was offered and admitted, not to prove a breach of the contract, but under the allegations of the petition and in connection with other evidence, to show that there was collusion and fraud in the manner of conducting the sale. Either notice or demand would have defeated the unlawful purpose the appellants had in mind, viz: "The intent

and purpose to deprive the said estate of its entire interest in the said stock." Evidence of what Oscar R. Fries did with the stock and assets of the corporation after the sale on April 18, was relevant as tending to prove, *first*, that the property represented by the shares of stock pledged, as well as the shares themselves, had been so changed as to render it impossible to restore the Schaaf estate to its rights as a stockholder upon payment of the $1,900 note, and, *second*, that "the secret and unlawful understanding or agreement" entered into between appellants before the sale on April 18, had afterwards been consummated by them. The value at which the merchandise belonging to the company was entered on its books February, 1, was in the nature of an appraisement, and not a mere inventory, it being shown by competent testimony that the goods were taken at their then actual value.   *   *   * Abbott's Trial Evidence, p. 52; 1 Greenl. on Ev., sec. 493, Lewis Ed., 1896. The offer of Mr. Arnstein to show by his own testimony, communications made to Mr. Bacon, was properly excluded, because there was nothing to show that Bacon represented Mrs. Schaaf. The offer to show communications made to Judge Talty and Mr. Krone, and by them to her was also properly excluded, because neither was employed by Mrs. Schaaf until some time after the sale on April 18. The jury having found that appellants disposed of the pledge in fraud of the estate of the pledgor, they are answerable for its fair and reasonable value, and will not be heard to say that such value would not have been realized had the sale been made in good faith and with a. proper regard for the rights of the pledgor. The instructions given by the court on its own motion in connection with those given at the instance of defendants, presented the case fully and fairly under the issues joined, and with due regard to the opposing

theories upon which it was tried.   There is not a correct proposition in any of the instructions refused that is not embodied in those given.

ALBERT ARNSTEIN for appellants.

Where the collateral agreement provides that upon default in payment of the debt a private sale may be made of the collateral without demand or notice, the pledgee may sell at private sale without demand and without notice.   Chouteau v. Allen, 70 Mo. 290; Bank v. Pretorius, 6 Mo. App. 410; Berlin v. Eddy, 33 Mo. 426.   The private sale spoken of in the contract and which is within the intention of the parties is a "private sale," to be made in the ordinary way, without notice of time or place, and known and made public to the parties thereto alone.   Milliken v. Dehon, 27 N. Y. 364–369; Dulling v. Weeks, 40 S. W. Rep. (Tex.) 178.   As the defendant Theresa Fries was authorized to make a private sale, without demand or notice, it was error to admit evidence to show that no demand was made or notice given.   Joplin v. Walton, 138 Mo. 485; Hardwick v. Hamilton, 131 Mo. 465. Such evidence merely tended to prejudice the mind of the jury.   The law recognizes but one legal representative of the estate of a deceased, the executor or administrator.   It was therefore error to admit evidence to show that no demand was made of Mrs. Schaaf (the widow) and that no notice of sale was given her.   Boeger v. Langenberg, 42 Mo. App. 7; Smarr v. McMaster, 35 Mo. 349; Leakey v. Maupin, 10 Mo. 368; Gelit v. Camp, 19 Mo. 404.   The widow as such is no more the representative of the estate and entitled to notice, than are any of the other heirs, or the creditors; she has no greater rights than a stranger would have, hence all testimony to show that no

demand was made or notice was given her, should have been excluded. The stock having no market value, it was competent to show the actual value of the assets at the time of the sale, in order that the value of the stock might thereby be fixed. Greer v. Bank, 128 Mo. 559; Trust Co. v. Lumber Co., 118 Mo. 447; Moffett v. Hereford, 132 Mo. 513; Robinson v. Hurley, 11 Iowa, 410. The testimony of the bookkeeper Bauer, who did not know the actual value of the merchandise, who testified from a trial balance made by him (not entered on the books) based upon an inventory (not an appraisement) made by third parties nearly three months before the sale as to the accuracy of which he knew nothing, was clearly incompetent to show the value of the assets. Hill v. Johnson, 38 Mo. App. 383. As the inventory made in January could not have been admitted in evidence, the contents of the trial balance, based upon that inventory, should have been excluded. State ex rel. v. Purcell, 13 Mo. 318; State v. Hattley, 131 Mo. 464. In an action for damages for improperly converting merchandise, the measure is not the price paid for the goods, or at what they were sold, but their actual value at the time of conversion. Horne v. Bone, 69 Mo. App. 481; Spence v. Vance, 57 Mo. 427; Nance v. Metcalf, 19 Mo. App. 183. The same rule applies where certificates of stock, which represent the assets of a corporation, are charged to have been improperly sold; the actual value of the merchandise at the time of the sale, tends to fix their value. Even if the evidence contained in the books was competent to prove the value of the assets, the books themselves should have been offered; the bookkeeper's testimony was secondary evidence. Walser v. Wear, 141 Mo. 443, 463; Ritchie v. Kinney, 46 Mo. 298. The court erred in permitting the bookkeeper to testify that $80 was the value of each share

of stock April 1, 1896, according to the books, based upon the inventory made in January, 1896. The book value was not the question to be determined, but the actual value based upon the actual value of merchandise on hand when the sale was made. State v. Hattley, 131 Mo. 464; Hewitt v. Steele, 118 Mo. 463-474. The court erred in permitting the witness Meyer to testify as an expert. When in the store he had no inventory, measured no goods, opened no boxes or drawers, of which there were over one hundred. * * * His opinion was merely a "guess" and should have been excluded. Miller v. Gillick, 66 Mo. App. 500. In determining the value of stock it must be gauged by what it was worth at the time and place of sale, and not what was done afterward, or its subsequent value under different conditions. Deck v. Field, 38 Mo. App. 674. Privileged communications between attorney and client at common law as well as under the statute, consist only of "communications made to an attorney by his client and his advice thereon." R. S., sec. 8925. The question asked Mr. Krone, as to whether he communicated to Mrs. Schaaf the facts which he had learned from Mr. Arnstein with reference to the collateral and note, was improperly excluded; it did not call for any communication made by Mrs. Schaaf to him or his advice thereon. Henderson v. Terry, 62 Tex. 281; Ford v. Tenant, 9 Jur. N. S. 292; Bartlett v. Bunn, 10 N. Y. S. 210. Mrs. Schaaf, having testified as to what Mr. Krone reported to her, she waived her right to object to his giving his version of the matter. Hunt v. Blackburn, 128 U. S. 464. Mr. Krone was not asked as to the advice he gave Mrs. Schaaf; the inquiry was directed to a question of fact, as to whether he imparted to her the information which he had obtained for her as her agent from Mr. Arnstein; this

was not privileged. Bromwell v. Noakes, 4 Dowling & Ry. 367-372; Spenceles v. Schulenbach, 7 East, 357.

BIGGS, J.—The Schaaf-Fries Dry Goods Company was incorporated with a capital stock of $12,000. The shares of stock were of the par value of $100 each. John G. Schaaf owned fifty-nine shares of the stock, and his wife one share. Oscar Fries and his wife owned the remaining shares. Schaaf died March 1, 1896. In March, 1895, he borrowed of Theresa Fries, the mother of Oscar Fries, $1,900, for which he executed his note. This note matured, to wit, March 23, 1896, subsequent to the death of Schaaf. To secure this note Schaaf hypothecated his fifty-nine shares of stock in the dry goods company. The note provided that in case of default in its payment, the shares of stock might be sold by Mrs. Fries at public or private sale, without notice of the sale or demand for the payment of the money. There was no administration on the estate of Schaaf, until the eighth day of May following his death. On that day letters were granted to Elizabeth Schaaf, the plaintiff, herein, the note having matured, and being unpaid, Mrs. Fries, to wit, on April 18, 1896, sold the shares of stock at private sale to Oscar Fries for $1,900. The amount of the sale was credited on the Schaaf note. When the plaintiff, who is the widow of Schaaf, learned of the sale, she applied for and was granted letters of administration on the estate of her husband, and she thereupon as such administratrix brought this suit for damages against Theresa and Oscar Fries, in which she charges in substance, that upon the death of Schaaf the defendants fraudulently conspired and confederated to obtain for Oscar Fries the interest of the estate of Schaaf in the corporation for less than it was worth, and to this end Mrs. Fries made a pretended

and fraudulent private sale of the shares of stock held by her as collateral aforesaid to her codefendant, and that this sale was made with full knowledge on the part of both defendants that the heirs of Schaaf did not know of the indebtedness to Mrs. Fries, nor that the shares of stock belonging to Schaaf had been in any manner pledged by him to Mrs. Fries, or to any one else. Then follow averments that the price at which the shares of stock were sold was grossly inadequate and far below their reasonable value; that the transfer of these shares put Oscar Fries in complete control of the corporation; that subsequently he caused the company to transfer all the assets to him, and that by reason of these facts the estate of Schaaf had been damaged in the sum of $2,900.

The answers of the defendants are in substance general denials. Upon a trial before a jury, a verdict for $2,400 was returned. On the hearing of the motion for a new trial the circuit court was of the opinion that the verdict was excessive to the amount of $500. Thereupon the plaintiff remitted that amount and judgment was entered for $1,900. The defendants have appealed.

The circuit court refused to direct a nonsuit. The defendants complain of this. The argument is, that by the terms of the note Mrs. Fries was not legally bound to give notice of the sale to any one, and therefore the plaintiff can not complain of a want of notice, nor base her action on a failure to give it, and that as evidence of the want of such notice was all that plaintiff relied on to prove the alleged fraud, the nonsuit ought to have been granted. It is true that notice to the heirs of Schaaf was not essential to a valid sale, but Mrs. Fries was bound as pledgee to exercise good

faith in making the sale, that is she was in duty bound to make reasonable efforts to make the property bring its value, or all that it would fetch in the market. The charge here is that she failed to do this, and that she conspired with her son to prevent it. As evidence of this conspiracy and fraudulent purpose, the plaintiff introduced evidence tending to prove that the sale was made without notice to the heirs of Schaaf of the existence of the debt and pledge or of the proposed sale, and that the shares of stock were sold for a sum much less than their reasonable value. This testimony was significant and relevant, especially in view of the claim made by plaintiff that the heirs of Schaaf had no knowledge of the existence of the debt and that the shares had been pledged for its payment. Besides there was evidence that as soon as Oscar got possession of the additional shares of stock he caused the corporation to transfer all of its assets to him, thus in effect disincorporating the company. It further appears that he continued the business at the same place on his individual account. This testimony had a tendency (although slight) to prove the final consummation of a plan to absorb beyond the possibility of redemption the interest of the estate of Schaaf in the corporation. The foregoing are my individual views. My associates are of the opinion that the defendants are in no position to question the sufficiency of the evidence for the reason that their instructions are drawn on the hypothesis that there was substantial evidence of a breach of duty on their part in the sale of the stock. To this I can not agree. Under such circumstances it requires but slight evidence to sustain a recovery, but I know of no decision that holds that an instruction can take the place of evidence, that is supply an entire lack of it.

It is insisted that the instructions given by the court on its own motion fail to state all the precedent conditions of the plaintiff's right to recover. After reciting the facts attending the alleged fraudulent combination, and which the plaintiff's evidence tended to prove, the jury was told that if they found those facts to be true, and that the sale made by Mrs. Fries was for an amount which was less than the fair and reasonable value of said stock at the time of said sale, then the finding should be for plaintiff, etc. For the defendants the court instructed in effect that even though the sale was recklessly made without regard to the rights of the estate, and that the stock was worth a sum in excess of the amount realized therefor, yet the plaintiff could not recover, unless *"at said time such greater sum could have been realized for the same."* It is insisted that these instructions are inconsistent and irreconcilable in that the instruction of the court told the jury that if the reasonable value of the stock was in excess of the amount it sold for, the plaintiff could recover, whereas under the defendants' instruction there could be no recovery, unless the reasonable value or greater sum could have been realized for the stock. These instructions are not inconsistent. It is true that the instruction of the court only presented a partial view, but it did not state erroneous precedent conditions as to the right of recovery. It merely failed to note the affirmative matter upon which defendants relied to mitigate the damages or defeat the action entirely. The better practice is, where an instruction assumes to state all the facts necessary to a recovery, it ought to direct the attention of the jury to all affirmative defenses of which there is any substantial proof. But if it fails to do so, and the omission is supplied by the instructions on the

INSTRUCTIONS.

other side, the law is satisfied.. This is the rule announced by the supreme court in a *per curiam* opinion in Schroeder v. Michel, 98 Mo. loc. cit. 48, and which was followed by us in Vogeli v. Pickle Co., 49 Mo. App. 643. *Prima facie* the stock would have brought its reasonable value if sold under favorable circumstances. When the plaintiff introduced evidence tending to prove fraud in the sale, and that the reasonable value of the stock exceeded the sum for which it was sold, presumptively the plaintiff was entitled to a verdict for such reasonable value, less the amount of the debt, for which the stock had been pledged. This was the theory of the court in presenting the plaintiff's case to the jury. If as a matter of fact the stock could not have been sold for more than it did sell for, or if it could not have been sold for as much as it was reasonably worth, it was for the defendants to show these facts in defense of the action or in mitigation of the damages. The instructions of the defendants presented this theory of the evidence, and when read in connection with the instructions of the court it is not probable that the jury was misled.

It was admitted that the shares of stock in controversy had no market value. It was a close corporation. To determine its value it became necessary to prove the value of the assets of the company, which consisted entirely of a stock of goods. In February, 1896, the company was embarrassed financially, and there were rumors on the street of a probable failure. One Richard Meyer, an experienced dry goods merchant, and buyer for Nugent Brothers, having heard the rumors, visited the store with the view of ascertaining the probable value of the stock. The storeroom was about seventy-five feet long, with an upper floor. The stock was on both floors. Meyer remained in the store about twenty or twenty-five minutes. In making his

examination he admits that he did not go behind the counters; that there were about one hundred boxes on the shelves and numerous drawers, which he did not examine, and that he did not go up stairs. The circuit court permitted him to give his opinion as to the value of the stock at that time. The defendants objected on the grounds, *first*, that the knowledge of the witness was not sufficient, and, *second*, that the time at which the examination was made was too remote. The last objection is not tenable. The first we think is well taken. Testimony as to the value of property, whether delivered by expert or nonexpert witnesses, must be based on adequate knowledge of the thing, and a knowledge of the state of the market. The opinions of nonexperts must be based on personal knowledge of the thing, but that of experts either on personal knowledge, or upon the testimony of those who had seen the property and were acquainted with its intrinsic properties. Thus in Haight v. Kimbark, 51 Iowa, the court decided that "a witness should not be allowed to testify to his opinion as to the value of property without first laying a foundation by showing him to be possessed of sufficient knowledge of the subject to form an opinion." So in Teerpenning v. Corn Exchange, loc. cit. 283, it was said: "Upon questions of value the opinion of witnesses are admissible, but with the qualifications that the witnesses must have peculiar knowledge of the article and its value." Again in Russell v. Hayden, 40 Minn. 88, the supreme court of Minnesota had the question before it. One of the grounds for rejecting the opinion of an expert witness as to the value of lumber in a building, was thus stated by the court: "His (witness) examination of the building after its completion was not such as enabled him to state the amount or value of the lumber furnished or that he in fact knew or had any

means of knowing the amount." It appeared that the witness, who was conceded to be an experienced builder, walked through the house after its completion, and upon the inspection that he was thus able to make, he formed an estimate of the amount of lumber in the building and its cost. He did not examine the plans and specifications with the view of obtaining accurate information as to the quality or quantity of the lumber used.

Under the authorities we think it clear that Meyer was not qualified to give his opinion as to the value of the stock. He did not know and could not know whether the boxes and drawers were full of goods, or only half full, or were entirely empty. He knew nothing about the goods on the upper floor, because he did not see any of them. He did not say that the goods he did see were worth the amount stated by him. As his estimate of value was far in excess of that claimed by the defendants his testimony was necessarily prejudicial to them.

Charles Krone, an attorney at law, testified for the defendants. He stated that in the spring of 1896, he was engaged by Mrs. Schaaf to look after her interests in the dry goods company; that he thereupon visited Mr. Arnstein, the attorney of Mrs. Fries, for the purpose of getting what information PRIVILEGED communications. he possessed as to the condition of the business; that Mr. Arnstein told him that Mrs. Fries held the stock of Schaaf as collateral to secure the $1,900 note, and that if Mrs. Schaaf would pay the note Mrs. Fries would gladly turn over the stock to her. The defendants then offered to prove by the witness that he communicated those facts to Mrs. Schaaf. The court on the objection of plaintiff refused to allow the witness to testify, on the ground that the imparting of this information by Krone to Mrs. Schaaf,.

must be treated as a confidential communication. The question is, can it be so regarded? One of the exceptions to the general rule which excludes communications between attorney and client, is in cases where the subject-matter of the communication is not in its nature private. 1 Greenleaf on Evidence, sec. 244. This exception is stated by the supreme court of Pennsylvania in Beeson v. Beeson, 9 Pa. 301, thus: "The rule does not extend to the protection of matter communicated, not in its nature private, or which can not properly be termed the subject of a confidential disclosure." Applying the rule we think it reasonably clear that the communication by Krone to Mrs. Schaaf of the facts learned from Arnstein can not be regarded as a confidential disclosure. It concerned facts which were within the knowledge of those who were opposed in interest to Mrs. Schaaf, and which facts she employed Krone to ascertain for her. The excluded evidence was very material, for the reason that the important contention of Mrs. Schaaf at the trial was that prior to the sale she did not know, and that Mrs. Fries had failed to notify her, that the stock was pledged for the security of a debt. It is suggested in support of the ruling of the court that the evidence which the court excluded was immaterial, for the reason that it does not appear that Krone obtained the information from Arnstein prior to the sale of the stock. It is true that Krone was unable to fix the exact date of his visit to Arnstein's office, but the just inference from what Arnstein told him is that the visit preceded the sale. If the sale had already taken place, why should Arnstein have said that the stock was held as collateral and that if Mrs. Schaaf would pay the note Mrs. Fries would gladly surrender the stock to her.

A few days after the death of Schaaf the plaintiff went to the office of the public administrator of the city and requested him to look into the condition of the estate and to administer on it. The public administrator consulted with his attorney in the presence of plaintiff, and the conclusion was that the attorney should investigate as to the condition of the estate and report the result. Thereupon the attorney went to the office of Mr. Arnstein, and there had a conversation with him about the affairs of the dry goods company. The defendants offered to prove by Mr. Arnstein what he communicated to the attorney, but the court declined to admit the evidence, for the alleged reason that the attorney of the public administrator was not the attorney or agent of plaintiff. The record does not show what the defendants expected to prove by Arnstein, which precludes us from reviewing the ruling. There are many other exceptions which we have examined, but our conclusion is, that aside from the errors pointed out, the case was fairly tried.

With the concurrence of the other judges the judgment of the circuit court will be reversed and the cause remanded. It is so ordered.

SEPARATE OPINION BY JUDGES BLAND AND BOND.

On this appeal the appellant is in no position to complain of the insufficiency of the evidence to support the verdict, since his own instructions submitted the case to the jury upon the hypothesis that there was substantial evidence tending to show a breach of duty in the disposition of the pledged stock. Berkson v. Railway, 144 Mo. loc. cit. 219; Water Co. v. City of Neosho, 136 Mo. loc. cit. 508; Hartman v. Railway, 48 Mo. App. loc. cit. 624; Seiter v. Bischoff, 63 Mo..

App. 157. There is a grave doubt in our minds whether the evidence on that point was sufficient to take the case to the jury, as fraud can not be presumed but must be proven. Garesche v. MacDonald, 103 Mo. 1; Robinson v. Dryden, 118 Mo. 534, and we do not feel disposed to conclude that question until its decision is rendered necessary by the case before us. We concur in the opinion of Judge BIGGS on the other points in this case.