# ELIZABETH SCHAAF, Adm'r of JOHN G. SCHAAF, Deceased, Appellant, v. OSCAR H. FRIES and THERESA FRIES, Respondents.

### St. Louis Court of Appeals, October 21, 1901.

1. **Bailment: PLEDGOR'S RIGHTS: BREACH OF CONTRACT: CONVERSION: DAMAGES: PRACTICE AND PLEADING: ACTION: POSSESSION.** An unlawful dealing with the pledge in antagonism to the pledgor's right, constitutes a breach of a contract of bailment which the pledgor may treat as a conversion of his property and bring either an action for damages or one to recover possession.

2. ———: ———: ———: **BAILEE: DUTIES: OF.** A bailee owes the duty to the bailor, in disposing of collateral securities, even at an authorized private sale without notice, to get the highest price he can under the circumstances.

3. ———: ———. The bailee is a trustee for the bailor in selling, and a collusive sale for his own benefit or the vendor's is not an execution of the trust, but an unwarranted conversion of the securities.

4. ———: ———: ———: **PLEDGOR: DUTIES OF.** But the pledgor has no right to the possession of the pledge until he pays, or tries to pay, what he owes.

5. ———: ———: ———: **DAMAGES.** And any damage the pledgor sustains by a wrongful sale of the pledge, on account of injury actually done to his property, or expense in getting it back, he may recover by the appropriate action. But the thing itself, or its value, only after he becomes entitled to its possession by keeping his undertaking.

6. ———: ———: **TENDER OF AMOUNT TO PAY DEBT SECURED.** A previous tender of money to pay the debt secured is an indispensable prerequisite to bringing any action against the pledgee.

7. ———: ———: ———. In the case at bar, the plaintiff must fail because she made no offer to discharge the note for which the stock had been pledged.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*W. M. Kinsey* for appellant.

(1)   The pledgee is, in effect, a trustee for the pledgor. No matter to what extent the power of the pledgee to sell may be enlarged by contract, still his duty to act in good faith and to treat the pledge in his hands as trust property in which the pledgor has an interest, continues and is imposed upon him by the law throughout his dealings with the pledge. Bank v. Richardson, 156 Mo. 270, and authorities cited; Trust Co. v. Rigdon, 93 Ills. 456; Jones on Pledges (2 Ed.), sec. 405. (2)   In the peculiar circumstances of this case, defendants had no right to sell the pledge without first giving the pledgor's legal representatives notice and an opportunity to redeem, notwithstanding the waiver of notice and demand, in the note. Both defendants knew that the pledgor died on March 1, twenty days before the note became due; both knew that his widow, the person having a prior right to administer, was in ignorance of the condition of his estate as affected by this pledge; and the court erred in refusing to allow plaintiff to prove that no demand was made after the note became due and before the pledge was sold.   Bank v. Baker, 4 L. R. A. 589.

*Albert Arnstein* for respondents.

(1)   Where the collateral agreement provides that upon default in payment of the debt a private sale may be made of the collateral without demand or notice, the pledgee may sell

at private sale without demand and without notice. Schaaf v. Fries, 77 Mo. App. 346; Chouteau v. Allen, 70 Mo. 290; Bank v. Pretorius, 6 Mo. App. 410; Berlin v. Eddy, 33 Mo. 426; Robinson v. Hurley, 11 Iowa 410; Loomis v. Stave, 72 Ill. 623; Jones on Pledges, sec. 611, and authorities. (2) The private sale spoken of in the contract, and which is within the intention of the parties is a "private sale," to be made in the ordinary way, without notice of time or place, and known and made public to the parties thereto alone. Millikin v. Dehon, 27 N. Y. 364-369; Dulling v. Weeks (Tex.), 40 S. W. 178. (3) The stock having no market value, and being unmarketable, evidence of the actual value of the assets at the time of sale, and the conditions surrounding the business, form a basis for approximating the value of the stock. Greer v. Bank, 128 Mo. 559; Trust Co. v. Lumber Co., 118 Mo. 447; Moffett v. Hereford, 132 Mo. 513; Robinson v. Hurly, 11 Iowa 410; 1 Spilling on Priv. Corp., sec. 499; Hitchcock v. McElrath, 72 Cal. 565; Hewitt v. Steele, 118 Mo. 463, 474.

GOODE, J.—Reference is made for a partial statement of the facts of this case, which is trover to recover damages for the conversion of certain shares of stock of the Schaaf-Fries Dry Goods Company, to the report of the decision on a former appeal. Schaaf v. Fries, 77 Mo. App. 346. All the circumstances stated in that opinion, appear in the present record, and some others; notably that the plaintiff testified that after the death of her husband, she called at the store of the company and inquired of the defendant, Oscar Fries, concerning her husband's interest in the business, who informed her there were no certificates of stock, but showed her an entry in a book to the effect that her deceased husband owned fifty-

nine shares.   He referred her for further information to one
Paul Wolff.   Wolff told her to let Oscar Fries manage the
business without interference and there would be twenty-five
hundred or three thousand dollars for each interest.   Mrs.
Schaaf testified she did not know her husband owed the nine-
teen-hundred-dollar note, for which his stock was pledged to
Mrs. Theresa Fries, nor in fact that he had any certificates in
pledge or out, until she learned these things after the stock
had been privately sold by Mrs. Fries to her son Oscar.

There was evidence tending to prove the stock was worth
more than the face of the note, which was what Oscar Fries
paid or agreed to pay for it.   On these facts it is claimed
there was a conspiracy between Theresa Fries and her son,
to obtain possession of the assets of the corporation by a fraud-
ulent, pretended and collusive sale of the stock by Mrs. Fries
to Oscar Fries, under the power of sale contained in the pledge.
Full authority was given in the written hypothecation to sell in
case of default, at either public or private sale, without no-
tice or demand for the payment of the money.   John G.
Schaaf, the pledgor, died March 1, 1896.   The note matured
the twenty-third of the same month, and the sale was made
about a month after without notice to the plaintiff as admin-
istratrix of Schaaf's estate, or demand.   It was a private sale
to Oscar Fries.

At the conclusion of the testimony, the court gave a per-
emptory instruction to the jury to return a verdict for the
defendant.   This, of course, involves an examination of the
entire record to see if there was any evidence which entitled
the plaintiff to go to the jury on the issue whether there had
been an unlawful conversion of the stock, resulting in damage
to the estate.

We are confronted at the threshold of the case with the
question:   Was the plaintiff bound to tender the amount of the

promissory note as a condition precedent to maintaining this
action to recover damages for the conversion of the stock which
was pledged to secure its payment? That point was not decided
on the former appeal, nor is it now raised by counsel; but neces-
sarily arises in considering the propriety of the court's action
in directing a verdict for the defendants. No proof of tender
was introduced and it is apparent from the testimony that none
was made. The sale of the stock was regular; that is, was in
conformity to the terms of the written authority and those
terms were lawful. Chouteau v. Allen, 70 Mo. 290. If it
was a nullity, it was because it was a sham transaction con-
ducted in bad faith. Circumstances of fraud in connection
with gross inadequacy of price may suffice to vitiate a sale.
Granting there was evidence tending to prove such facts, the
plaintiff's right to redeem the shares would remain intact. If
both the defendants participated in the fraud, the right could
be enforced against them as joint tortfeasors, either by an
action to recover the shares themselves or in trover for their
value (Nelson v. Owne, 113 Ala. 372; Jones on Collateral
Securities (2 Ed.), section 556), and, doubtless, in this in-
stance, where the interests of an estate are involved, by a bill
in equity. The legal remedies are available, we apprehend,
on the theory that in point of fact no act or sale, intended to
pass title, took place, but merely the semblance of one for the
purpose of cutting out the pledgor's right of redemption. In
such case an action in the nature of trover will lie, it seems.
Lacombe v. Forstall's Sons, 123 U. S. 562; Roland v. Lan-
caster Bank, 135 Pa. St. 598. Such a course is simply one
of various modes in which a pledgee can unlawfully convert
the pledge to his own use. Its tortious character consists in
its essential departure from the terms of the bailment. Power
to realize on the security by actually selling it, in no sense
authorizes a mere shuffle to deprive the owner of his title and

his claim to have it restored on payment of the debt. A false sale is no sale at all, but an unlawful dealing with the pledge in antagonism to the pledgor's right and constitutes a breach of the contract of bailment which he may treat as a conversion of his property, and bring either an action for damages or one to recover possession. A bailee owes the duty to his bailor, in disposing of collateral securities, even at an authorized private sale without notice, to get the highest price he can in the circumstances. He is nothing less than a trustee for the bailor in selling: A collusive sale for his own benefit or the vendee's, will not be an execution of the trust in the eye of the law, but an unwarranted conversion of the securities for which all guilty participants are responsible.

But what must the pledgor do to make his remedies available? If he seeks relief in equity, as sometimes he may, unquestionably he must first perform, or offer to perform, his own obligation—must do equity. Nor is the rule otherwise if he proceeds at law; tender is still necessary. Doak v. Bank, 6 Ired. (N. C.) 309; Durant v. Einstein, 35 How. Pr. 223; Jones on Collateral Securities, supra. Cases are in the books which decide that an unwarranted dealing with the property, *eo instante,* annuls the contract of bailment so that the pawnor may recover the pledge or its value without discharging or offering to discharge his indebtedness, though probably they would have it considered in measuring the damages in an action for the conversion. But we deem the weight of authority and argument to be on the side of the doctrine that the contract of bailment is not extinguished by a wrongful sale, but merely broken; and that the pawnee or his vendee may retain the pawn until the debt is satisfied or satisfaction offered, notwithstanding such breach. An action of trover assumes an immediate right to possession of the property in the plaintiff. But the pledgor has no right to possession of the pledge until

he pays, or tries to pay, what he owes. Any damage he sustains by the wrongful sale on account of injury actually done to his property, or expense in getting it back, he may recover by an appropriate action; but the thing itself, or its value, only after he becomes entitled to its possession by keeping his undertaking. Johnson v. Steer, 15 C. B. N. S. 330; Donald v. Suckling, 1 L. R. Q. B. 584; Halliday v. Holgate, L. R. 3 Exch. 299; Cooley on Torts (2 Ed.), 531. The Schaaf estate still owes Theresa Fries nineteen hundred dollars, if the sale was a nullity, and an action for the conversion of the shares will not lie against the defendants if no offer was made to discharge the debt. What is there to show the stock would not have been surrendered if the offer had been made? Is there any evidence to prove plaintiff was denied her right of redemption? We find none. The shares were still in the reach of the original pledgee, or at least of the two defendants. It was within their power to restore them when the condition was performed which entitled the plaintiff to demand restoration; and as all the conditions of a valid sale were observed, we consider that evidence merely tending to prove that the sale and purchase by Oscar Fries were for the purpose of acquiring control of the company, lays an insufficient basis for this action, in the absence of proof that plaintiff offered to pay the note or was refused the right of redemption. We are unable to hold that such a sale destroyed the bailment and ended Theresa Fries' right as pledgee to retain the property until her debt was paid.

One of the most vexed and intricate problems of the law is concerning the necessity of a prior demand for property as a condition precedent to an action for its conversion. We need not become entangled in the meshes of the conflicting and utterly irreconcilable decisions on that subject. Tender and demand are distinct and different acts: One may be dispensed with

when the other is required.    Tender is an offer by a party to perform his own legal duty; demand is a request of another party to perform his.    It gives him an opportunity and tests his willingness to perform.    We may remark, in passing, however, that a demand is often a prerequisite to an action of trover, and that the necessity for it, in appropriate instances, has been ruled to remain unaffected by our statute on the subject.    R. S. 1899, sec. 1575; Nanson v. Jacob, 93 Mo. 331. At all events, a previous tender of money, to pay the debt secured, has been held indispensable by high and controlling authorities, besides those above cited, in cases similar to this one.    McClintock v. Central Bank, 120 Mo. 127; Talty v. Freedman's Savings & Trust Co., 93 U. S. 321.    They must be followed, and the result is, the plaintiff's case fails because no offer to discharge the note for which the stock stood pledged was ever made.

The judgment is, therefore, affirmed.    All concur.