TENNENT, Appellant, v. UNION CENTRAL LIFE INSURANCE COMPANY, Respondent.

St. Louis Court of Appeals, July 18, 1908.

1. CONFLICT OF LAWS: Lex Loci Contractus. A note, signed in this State but made payable in Ohio, given for a loan on a life insurance policy, which loan was not consummated until approved by the company in that State, was an Ohio contract.

2. ————: Laws of Another State: Presumption. In the absence of proof as to what the law of another State is, it will be presumed to be the same as the law of the forum. The State of Ohio, having been carved out of the Northwest territory, which

at the time of its acquisition was not occupied by a civilized and organized community, is presumed to be subject to the common law, which prevails in Missouri.

3. **PLEDGES: Sale of Pledge: Public Sale: Insurance Policy.** An insurance policy, pledged to secure money borrowed by the policy holder from the company under a contract which provided for a public or private sale in case of default, was sold at auction in the office of the company with no previous public notice, when nobody was present except the employees of the company, and was bid in by the company; this was not a public sale nor a private sale. The relation of pledgor and pledgee remained between the policy-holder and the company.

4. ————: **Tender of Debt: Waiver.** Where the pledgee in such case claimed that the debt for which the pledge was made was paid by the sale of the pledge, it waived the necessity of a tender of the debt by the pledgor, before suing in order that he might recover the pledge on the ground that there was no sale.

5. ————: ————: **Suit on Obligation Pledged.** When an obligation is pledged, the pledgee may sue on it in his own name and apply the proceeds recovered to the discharge of the debt, holding the surplus in trust for the pledgor. The pledgor alone cannot sue at law.

6. ————: ————: ————: **Pledgee as Obligor.** But where the pledgee is the obligor in the instrument pledged and the debt for which it was pledged has been tendered by the pledgor, the latter alone may sue' the pledgee on the obligation. Where an insurance policy was pledged by the policy holder to the company to secure money borrowed, on the tender of the debt due, the beneficiary in the policy, after the death of the insured, could sue on the policy. All the parties to the instrument were in court, and their rights with respect to the pledge could be determined in the suit; this is not obnoxious to the statute requiring the suit to be brought in the name of the real party in interest.

7. ————: ————: ————: ————: **Estoppel.** In an action in such case the evidence is examined and held that the beneficiary was not estopped to sue and that the husband of the beneficiary who was the insured, was not the agent of the beneficiary to receive notice of a sale of the policy which had been pledged so as to estop her to sue upon it.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

NORTONI, J.—This suit is on a policy of life insurance. The finding and judgment were for the defendant in the circuit court and the plaintiff prosecutes an appeal. The plaintiff and her husband, the insured, jointly borrowed a sum of money from the defendant insurance company and pledged the policy sued upon as collateral security for the loan. Default having occurred, under the stipulations of the collateral note, the insurance company sold the pledge to satisfy the indebtedness, became the purchaser thereof at the sale, and cancelled the policy. Thereafter, the insured departed this life and the plaintiff, after offering to pay the loan for which the policy had theretofore been pledged and sold, instituted this suit to recover the amount of the policy, less the loan, notwithstanding the pledge, alleged sale and cancellation of the policy. The theory of the plaintiff's case is that the sale and consequent cancellation of the policy by the defendant company was invalid, and therefore the policy remains in the possession of the company as pledgee, subject to her rights as general owner, identically as it did prior to the alleged sale.

The material facts out of which the controversy arises, are as follows: During the month of December, 1900, John H. Tennent, Jr., negotiated an insurance to the amount of $4,000 on his life with the defendant company. The policy was made payable to his wife, May Scott Tennent, the present plaintiff. The annual premium was paid by him at the time. By a stipulation to that effect, further premiums of the same amount fell due annually on the 15th day of December, of each year. The insured paid the premiums which thereafter fell due on the 15th day of December in the years 1901 and 1902, and gave his notes for the premium which fell due December 15, 1903. These notes were outstanding and unpaid on June 25, 1904, at which date the insured and the plaintiff, his beneficiary, negotiated a loan from the defendant company for $155 on the security of the policy.

For this amount, the insured and the plaintiff executed their joint promissory note, dated Cincinnati, Ohio, June 25th, 1904, whereby they jointly and severally promised to pay to the order of the defendant, Union Central Life Insurance Company, $155, at its office in Cincinnati, Ohio, with interest at eight per cent per annum, payable annually; the note falling due on or before five years after its date. While this note was actually signed by the parties in the city of St. Louis, Missouri, the loan was negotiated with the insurance company at Cincinnati, Ohio, and the note was finally accepted and approved by the defendant at its home office. This note is termed a collateral note, and it contains a contract with respect to the collateral pledge of the insurance policy to the defendant as security for its payment. Under this collateral note and contract, plaintiff and the insured agreed to keep the premiums paid on the policy, and that if any installment of interest on the note or any premium on the policy should become due and unpaid, then the principal and accrued interest on the note should immediately become payable, and for default in the payment of any premium on the policy, or otherwise mentioned, the insurance company was thereby authorized to sell the policy "at any time or place without notice at public or private sale." The insurance company was further authorized to become the purchaser of the pledge at such sale, if it so desired, at an amount not less than the amount of the indebtedness evidenced by the note; and the insurance company agreed to account to the makers of the note for any surplus, after satisfying the indebtedness. In accordance with the arrangement, which was consummated by the loan, the insurance company applied $119.04 of the amount of the loan to the payment of the notes given by the insured on December 15, 1903, for the premium on the policy due on that date. The remainder of the amount of the loan, $35.96, was paid to the insured and his wife, the plaintiff, by draft, and

was employed by them for purposes other than the payment of premiums on the policy in suit. The premium falling due December 15, 1904, was not paid and the insured having failed to pay the same after demand, the defendant insurance company, on March 15, 1905, mailed notices to both the insured and the plaintiff, who resided in the city of St. Louis, to the effect that unless the premium of December, 1904, was paid, the policy would be sold at public sale by the insurance company at its office in Cincinnati as for default therein and for the purpose of satisfying the indebtedness evidenced by the note heretofore mentioned. It appears the insured received this notice. It also appears that his wife, the plaintiff, received no notice whatever of the proposed sale of the pledge. Afterwards an agent of the insurance company called upon the insured and discussed the matter of the sale of the policy to be had on March 31, 1905. The insured said he would be unable to pay the premium and consented to the sale, so far as he was concerned. This conversation was with the insured only, however. His wife, the plaintiff, had no knowledge whatever thereof. No public notice of the sale was given. In accordance with the notice theretofore given to the insured and the plaintiff, the policy was sold at public outcry in the defendant's office at Cincinnati, Ohio, on the 31st day of March, 1905. The treasurer of the insurance company acted on its behalf in making the sale. The policy was bid in at the request of this same officer of the company by one of its clerks for an amount sufficient to satisfy the note, $155. There were present at this sale the treasurer of the company, who acted as auctioneer, a clerk in the employ of the company, who acted as bidder for the company, and one other of the company's employees. At the conclusion of the sale, the policy was marked cancelled, placed in the files of the defendant company, and the transaction involving the insurance mentioned, together with the plaintiff's in-

debtedness, was cancelled on the records of the company as of that date. Notice was mailed on the same day to both the insured and the present plaintiff, rendering an account of the sale, merely stating that the policy, No. 216596, issued to John H. Tennent, had been sold that day at the company's office, in accordance with notice recently addressed to the insured and beneficiary, for the amount of the loan, for the reason of the non-payment of the premium on the policy theretofore mentioned and that the policy had been cancelled. This notice the insured received. The notice mailed to the plaintiff to that effect, failed to reach her, however. No further premiums were paid on the policy, nor was anything paid or tendered on the note mentioned until after the death of the insured.

The insured, John H. Tennent, Jr., came to his death by an act of suicide on May 28, 1906, nearly fourteen months after the alleged sale of the policy in pledge. Although no premium had been paid on the policy after that of December 15, 1903, which was paid out of the loan in June, 1904, the policy was possessed of a reserve value amounting to $244. This reserve value, computed under the rule of our statute, sec. 7897, R. S. 1899, for the purpose of purchasing extended insurance, was sufficient, when applied as a single premium on temporary insurance for the full amount written in the policy, to continue it in force for a considerable time beyond the date of the insured's death. Plaintiff instituted this suit by declaring upon the policy of insurance, and prays for the amount thereof, less the amount of the loan and accumulated interest thereon.

The answer is one of confession and avoidance. It admits the issuance of the insurance policy, payable to the plaintiff, and other material matters, and affirmatively pleads the facts pertaining to the loan of $155 thereon to the plaintiff and her husband, the pledge of the policy as collateral security therefor, and the al-

leged public sale of the pledge for default on the note, and the purchase and cancellation of the policy.

Replying to this affirmative defense, the plaintiff alleges that the pretended sale of the pledge was invalid and of no effect, and therefore the policy remained in full force in the defendant's possession as a pledge collateral to the indebtedness mentioned in the note.

It is conceded the policy is a Missouri contract and that therefore our statute, sec. 7896, R. S. 1899, providing substantially that suicide of the insured shall be no defense to an action on the policy unless it appears the insured contemplated suicide at the time of taking out the insurance, controls this feature of the case. That is to say, this statute is parcel of the contract and nothing appears tending to prove the insured contemplated suicide at the time of applying for the insurance.

Plaintiff's case proceeds in affirmance of the theory that the sale of the policy by the defendant, under the circumstances stated, was invalid and that the defendant continued to hold the same as a pledge. This proposition, of course, involves the idea of general ownership in the plaintiff pledgor. To determine this question with the degree of precision of which it is worthy, it becomes essential to ascertain, first, whether we are to look to the Missouri or to the Ohio law pertaining to the sale of pledges for our guidance. The solution of this question to some extent depends upon whether or not the collateral note and contract of pledge is a Missouri or Ohio undertaking, for the *lex loci contractus* is essentially parcel of the contract. The application for the loan of $155 on the security of the policy was submitted to the home office of the insurance company at Cincinnati. Although the collateral note containing the contract of pledge was actually signed in this State, the bargain respecting the loan was incomplete until it was approved and accepted by the defendant company at its office in Cincinnati. The note was dated at Cincinnati,

and by its terms, made payable there. Under these circumstances, the collateral note is an Ohio contract. The approval and acceptance of the note in Ohio was the act which rendered the bargain complete. The rights of the parties are therefore to be determined by reference to the law of that State, provided the law of Ohio in respect of such matters is before the court. [Johnston v. Gawtry, 83 Mo. 339; s. c., 11 Mo. App. 322; Phoenix Mut. Life Ins. Co. v. Simmons, 52 Mo. App. 357; 22 Amer. and Eng. Ency. Law (2 Ed.), 1344.] There is nothing in the case indicating what the law of the State of Ohio may be. In the absence of proof on this question, it is generally presumed by the courts of one State that the law of a sister State is the same as the law of the forum. [Flato v. Mulhall, 72 Mo. 522; Warren v. Lusk, 16 Mo. 102; Johnston v. Gawtry, 83 Mo. 339; s. c., 11 Mo. App. 322; Lucas v. Ladew, 28 Mo. 342; 13 Amer. and Eng. Ency. Law (2 Ed.), 1060.] It is true this presumption does not obtain with respect of the common law as to those sister States which we know as an historical fact were peopled by countries other than the source of the common law and were subject to organized and civilized communities emanating from jurisdictions other than those in which the common law obtained. [Clark v. Barnes, 58 Mo. App. 667; Bain v. Arnold, 33 Mo. App. 631; Flato v. Mulhall, 72 Mo. 522; Cloan v. Torry, 78 Mo. 623; 13 Amer. and Eng. Ency. Law (2 Ed.), 1062, 1063; 6 Amer. and Eng. Ency. Law (2 Ed.), 280, 281.] However this may be, the presumption does obtain with respect to those States having a common origin, formed from the original colonies and such as have been formed from territory acquired since the Revolution which was not, at the time of its acquisition, occupied by an organized and civilized community. The presumption obtains with respect to the State of Ohio, carved as it was out of the great northwest territory, which, at the time of acquisition was not under the

jurisdiction of an organized, civilized community other than the United States or England. [Kratz v. Preston, 51 Mo. App. 251; Roll v. St. L. & Colo. Smelt Co., 52 Mo. App. 60; Amer. Oak Leather Co. v. Wyeth Hdw., etc., Co., 57 Mo. App. 297; 6 Amer. and Eng. Ency. Law (2 Ed.), 280.] The reasoning of the law proceeds upon the theory that civilization and government were transplanted to and established in this territory by former residents of those States in which the common law obtained, and therefore they are presumed to have carried to the new country the common law, its principles and traditions, and incorporated them into the constitutions and the early institutions of the State government. [13 Amer. and Eng. Ency. Law (2 Ed.) 1060-61-62-63; 6 Amer. and Eng. Ency. Law (2 Ed.), 280; Savage v. O'Neil, 44 N. Y. 298; Morris v. Harris, 15 Calif. 226; Johnston v. Gawtry, 83 Mo. 339; s. c., 11 Mo. App. 322; Warren v. Lusk, 16 Mo. 102.] It therefore appears the matter under advisement is to be disposed of in accordance with the principles of the common law which obtains alike in Ohio and Missouri. In such circumstances, when the decision turns upon the construction of the common law of a sister State, the court will follow its own precedents in expounding the rules applicable to a particular transaction. [St. Nicholas Bank v. State Natl. Bank, 128 N. Y. 26; Ray v. Northern Pa. Natl. Gas Co., 138 Pa. St. 57; 6 Amer. and Eng. Ency. Law (2 Ed.), 383.] The common law pertaining to the sale of pledges under circumstances very much resembling the case in judgment, has been fully declared by the court of last resort in this State. These adjudications control the solution of the question now presented. The collateral note stipulated that the policy might be sold for any one of the several defaults therein mentioned at any time or place and without no-. tice, at either public or private sale. The sale relied

upon by the insurance company in this case is asserted to have been a public sale. In other words, it is not claimed that the pledge was sold under the provisions of the contract authorizing a private sale. The fact is, the policy was sold at auction by the treasurer of the company in the company's office at Cincinnati and no public notice whatever was given of the intended sale. Now the very idea of a public sale involves, of course, notice thereof to the public, to the end that the public shall be invited as bidders, and further, that the sale shall be had in a public place to which the public, one and all, may resort for the purpose. Our Supreme Court construed a pledge contract containing a provision authorizing a public sale without notice, to mean that such provision with respect to a public sale dispenses with notice to the pledgor only and did not authorize the sale of the pledge without full public notice to that effect. [Laclede Natl. Bank v. Richardson, 156 Mo. 207; Hagan v. Cont. Natl. Bank, 182 Mo. 319.] And likewise, in a case where a contract authorized the pledgee to sell certain stocks held by it in pledge at any place, the same court declared the sale, which was alleged to have been a public sale, had in the Merchants Exchange, to which only members were admitted, to be invalid for the reason it was not had in a public place. [Hagan v. Cont. Natl. Bank, 182 Mo. 319.] In view of these two established propositions in our law, the alleged public sale of the insurance policy at the company's private office and without public notice, was invalid, and therefore the policy remained, at the time of the institution of this suit, in the hands of the pledgee as a pledge, to which the plaintiff sustained the relation of pledgor, and in whom resided the general ownership of the policy; for it is generally true where the pledge remains in the possession of the pledgee after an invalid sale, he continues to hold it as a pledge, subject to all of the rights of the pledgor identically as before the in-

valid sale. [Hagan v. Cont. Natl. Bank, 182 Mo. 319, 343; 22 Amer. and Eng. Ency. Law (2 Ed.), 892; Jones on Pledges (2 Ed.), sec. 741; Schaaf v. Fries, 90 Mo. App. 111; Sharp v. Nat. Bank, 87 Ala. 644.]

It is urged that although the sale was invalid and the policy remains in the possession of the defendant as a pledge, this suit cannot be maintained on the policy. There is no doubt a suit in equity, looking to the redemption of the pledge, could not be maintained in these circumstances for the reason the law furnishes adequate redress. [Nelson v. Owen, 113 Ala. 372, 376; Jones on Pledges and Collateral Security (2 Ed.), sec. 556; 16 Ency. Pl. and Pr., 645, 646; 22 Amer. and Eng. Ency. Law (2 Ed.), 892.] The remedy available and usually employed where the pledgee has destroyed or converted the pledge to his own use, is trover as for conversion. [16 Ency. Pl. and Pr. 648, 645; Jones on Pledges (2 Ed.), secs. 561, 556; Southworth Co. v. Lamp, 82 Mo. 242; Schaaf v. Fries, 90 Mo. App. 111.] And where, notwithstanding the payment of the debt or a proper tender thereof, the pledgee continues to withhold the pledge from the pledgor, detinue or replevin will lie to the end of reinstating the pledgor in possession. [16 Ency. Pl. and Pr., 649; Nelson v. Owen, 113 Ala. 372; Miles v. Walther, 3 Mo. App. 96; Schaaf v. Fries, 90 Mo. App. 111.] There is authority for the proposition that even though the instrument or obligation pledged is an obligation of the pledgee, with the general property residing in the pledgor, as in the case of bank bills issued by a bank and afterwards pledged to it as collateral for a loan, trover will lie against the bank and in favor of the pledgor for their value in case of conversion. [Jones on Pledges (2 Ed.), sec. 562; Abrahams v. Southwest R. R. Bank, 1 S. C. 441, 7 Amer. Rep. 33.] But the form of action here employed is neither that of trover as for conversion, seeking to recover the value of the pledge, nor that of replevin, seeking to acquire possession

of the pledge itself. This suit is by the pledgor and against the pledgee, who occupies the dual relation of pledgee and debtor to the pledgor, in virtue of the obligation contained in the instrument in pawn. The precise question for decision is: can the pledgor in these circumstances maintain a suit against the pledgee on its obligation contained in the instrument pledged? Learned counsel argues that to say a person can pledge an undertaking as security for a debt and at the same time retain power to enforce the undertaking during the life of the pledge, involves a contradiction. To sustain the proposition, it is insisted that the security derived from the pledge arises from two circumstances; first, the pledgor has no power to resume possession of the article or enforce the undertaking pledged until the debt is paid; and second, the pledgee has power or the right to sell upon default. It is said if the pledgor had the power to resume possession or enforce the obligation of the pledge before payment of the debt, the security sought to be vouchsafed by the contract of pledge would be entirely destroyed. There can be no doubt this argument is entirely sound in respect of pledges generally. It proceeds upon the theory that the debt for which the pledge was given in the particular instance was neither paid nor tendered. It is very true the plaintiff still owes the $155 indebtedness and interest thereon to the defendant. There was a sufficient tender of its payment, however, prior to the institution of this suit. This tender was rejected. The defendant asserted that the indebtedness had been paid by the sale of the pledge, the policy cancelled, and that, by virtue of the sale, the general property in the policy theretofore residing in the pledgor, had been entirely divested. Plaintiff was not permitted to pay the indebtedness for the reason the defendant would not accept it. The formalities of a further tender were waived by the defendant insisting the debt was paid; for it cannot insist that there is no in-

debtedness and at the same time assert its right to a tender to extinguish the identical debt it insists has been paid. [Hurt v. Cook, 151 Mo. 416; Westlake v. City of St. Louis, 77 Mo. 47; Deichmann v. Deichmann, 49 Mo. 106; Whelan v. Reilly, 61 Mo. 565.] The plaintiff, replying to defendant's answer, avers she still owes the indebtedness mentioned and prays to be given judgment for the amount of the policy, less the amount of her note and interest thereon. It is true, generally speaking, that the pledgee of a chose in action has the right to enforce it when it becomes due, and that such right is exclusive; that is, the pledgor cannot maintain the suit alone. The pledgee thus suing on or for the value of the pledge, occupies the relation of trustee to the use of the pledgor, and recovers, if at all, as such; the obligation being to apply so much of the recovery as is necessary to the extinguishment of the debt, and hold the remainder in trust for the pledgor. [Norton v. Warner, 3 Edw. Chcy. (N. Y.) 106; Dickey v. Porter, 203 Mo. 1; 22 Amer. and Eng. Ency. Law (2 Ed.), 894-5-6; 6 Ency. Pl. and Pr., 639, 640, 641; Jones on Pledges (2 Ed.), secs. 429, 430.] At common law, the assignee of a chose in action could sue thereon only in the name of his assignor, while in the courts of equity, the assignee being the real party in interest, could maintain a suit in his own name. The obvious purpose of our code was to abolish mere fictions of law and forms of procedure to the end of affording a simple and adequate remedy touching the substance in every case instead. It was therefore provided in section 539, Revised Statutes 1899 (sec. 539, Mo. Ann. St. 1906), that there shall be but one form of action for the enforcement of private rights; and by section 540, that every such action shall be prosecuted in the name of the real party in interest, except as otherwise provided in exceptional cases, which are unimportant here. A contract of pledge is a legal obligation, effectuated by the

pledgor depositing with the pledgee personal property
as security for an indebtedness or other engagement,
with an implied power of sale in the pledgee on default.
In such circumstances, the pledgor remains possessed
of a general ownership in the property pledged, subject
only to the lien of the indebtedness existing in favor of
the pledgee. [Ottumwa Nat. Bank v. Totten, 114 Mo.
App. 97; Richardson v. Ashby, 132 Mo. 238, 246; Brew-
ster v. Hartley, 37 Cal. 15, 25; 22 Amer. and Eng. Ency.
Law (2 Ed.), 864, 865.] Although a suit may be prose-
cuted and a recovery had thereon by the pledgee alone, it
is entirely competent, and in fact, it comports precisely
with the spirit of the code, for such suit on the instru-
ment pledged to be prosecuted in the name of both the
pledgor and the pledgee against the obligor in the instru-
ment, to the end that all parties interested therein shall
be before the court that the several rights of the obligor
in the instrument, the general owner thereof, and the
lienor thereon, may be fully determined and finally pre-
cluded by the judgment. Indeed, it has long been set-
tled that one who has assigned an obligation or lien as
collateral security, may, if he has an interest in it, main-
tain an action for its enforcement, and that the assignee
is a necessary party to such action. [Ridgway v. Bacon,
9 Hun (N. Y.) 211; Dickey v. Porter, 203 Mo. 1, 22.]
There are remarks to be found in Dickey v. Porter,
supra, which would seem to extend the doctrine quite
beyond what has been said in this opinion. An attentive
consideration of the facts of that case, however, will
disclose that it was one of exceptional circumstances,
and in view of the fact that the indebtedness for which
the taxbill therein pledged had been paid prior to the
trial, the judgment of the court given thereon is ob-
viously sound. In that case, the suit was by the pledgor
to enforce the lien of a special taxbill held in pledge at
the time the suit was instituted. The indebtedness for
which the taxbill had been pledged, was discharged, how-

ever, before the trial and upon full consideration, the court declared the pledgor might maintain an action on the obligation, notwithstanding the pledge was outstanding at the time the suit was instituted. The question turned upon the proposition that the pledgor, notwithstanding the pledge at the time of the institution of the suit, was the real party in interest when judgment was given, and that all interests in the taxbill were then before the court and in judgment. It is no doubt true that where a suit on a pledged instrument is prosecuted by the pledgor alone, without joining the pledgee, and against a third party, who is obligor in the pledged instrument, the recovery, if at all, would be perforce of the pledgor's general ownership in the pledge, and possibly to the exclusion of the pledgee's interest for the pledgor is not, under those circumstances, a trustee executing the trust to the benefit of the pledgee, as is a pledgee to the use of the pledgor when he recovers on the pledge. In those circumstances it is quite probable that the third party, the obligor in the pledged instrument, might possibly be subjected to the annoyance of two suits, for there is no doubt as to the right of the pledgee to sue thereon. When we look to the obvious purpose of our code provision commanding suits to be prosecuted in the name of the real party in interest it is manifest no such result could be entailed by sustaining the present action; for here, while the pledgor alone is plaintiff, the pledgee, obligor in the instrument pledged, is defendant, and therefore all parties in interest are before the court as parties to the record. The judgment given by the court on such a record essentially disposes of all interests in the controversy and thus meets and satisfies the fundamental notion involved in the code provision respecting the real party in interest. We are not disposed to say that prior to the payment of the debt the pledgor alone, without joining the pledgee, can maintain a suit on the obligation of the pledged instrument against the maker

thereof, who is a third party, unless the rule of Dickey v. Porter, supra, compels it. That case, as we understand it, does not go to the extent of asserting the doctrine mentioned; and if it did, it would not be precisely in point here, for the facts under advisement in the present instance do not present the question suggested; that is, the obligor in the instrument sued upon is not a third party. The court is of the opinion, however, that it is entirely proper, upon the peculiar facts presented by this record, for the pledgor to maintain this suit against the pledgee on the policy, and this, for the reason that while both the pledgor and pledgee are not parties plaintiff, they are both parties to the record and the judgment of the court will essentially determine as between them all interests in the obligation contained in the pledged instrument, the indebtedness for which it was pledged, and the relative rights of the parties in the fund arising from a recovery on the pledge. It is certain that both pledgor and pledgee could not join as plaintiffs in this action against the defendant insurance company, who is pledgee, and at the same time obligor in the instrument it is holding in pledge, for the reason the defendant could not sue itself; and were the defendant pledgee a co-plaintiff to the action, there would be no defendant against whom to prosecute the suit. Although the pledgor is not possessed of the entire interest in the pledge, the obligor in the instrument pledged being the pledgee thereof, and at the same time defendant in the action, we are persuaded that the spirit of the code requiring suits to proceed in the name of the real party in interest; that is, to the end that all parties in interest shall be before the court; is fully satisfied in this instance, and therefore sustain the action in the form it has assumed. Dickey v. Porter, 203 Mo. 1, is at least authority for the principle invoked.

Although the plaintiff was a married woman at the time of the pledge and until the death of the insured,

nevertheless the enabling provisions of our married woman's statute render her *sui juris*, and therefore the doctrine of estoppel with respect to persons other than her husband obtains against her, identically as it does against other persons not under disability. [Leet v. State Bank, 115 Mo. 184.] It is argued that plaintiff is estopped to assert her rights in the policy that she acquiesced in the sale thereof. The proof shows affirmatively that plaintiff had no personal information that the pledge was about to be sold or that it was sold to satisfy the debt, and that she neither made a statement nor did an affirmative act encouraging the defendant to believe that she acquiesced in or otherwise affirmed the sale of the policy. An estoppel *in pais* in the nature of acquiescence by silence is relied upon. The ground upon which an estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. [2 Herman on Estoppel, sec. 944.] It is insisted that the silence of plaintiff with respect to the rights she asserts, for a period of fourteen months and until the pledge had increased from $244 to $4,000 in value, operates a constructive fraud at least upon the defendant and ought therefore to preclude plaintiff's right of recovery. If all of the elements of an estoppel were present, the argument would be persuasive indeed, for it is well settled that a debtor may lose his right to question the sale of his collateral by acquiescing therein with full knowledge of all of the material facts respecting the transaction, for an unreasonable time; and especially does this doctrine obtain where something has transpired during the period of acquiescence operating to greatly enhance the value of the security pledged. [Jones on Pledges (2 Ed.), secs. 743-637b; 22 Amer. and Eng. Ency. Law (2 Ed.), 886; Hayward v. Elliott Nat. Bank, 96 U. S. 611; Hill v. Finigan, 77 Cal. 267; Downer v. Whittier, 144 Mass. 449; Earl v. Grant, 14 R. I. 228.] However this may be, acquiescence imports and is found-

ed on knowledge and assent. The doctrine is entirely without influence unless it appears the party against whom it is invoked was fully aware of his rights, for a person cannot acquiesce in a matter in respect of which he is ignorant, nor can one be precluded by the doctrine of acquiescence unless possessed of full knowledge as to his rights and all of the material facts and circumstances attending the particular transaction in respect of which the doctrine is invoked.     [2 Herman on Estoppel, sec. 1062; Sharp v. Nat. Bank, 87 Ala. 644; Galbreath v. Newton, 30 Mo. App. 380; Burke v. Adams, 80 Mo. 504; Jones on Pledges (2 Ed.), 637b.]     Plaintiff having no personal knowledge whatever concerning the sale of the pledge, it appears she is not estopped by having acquiesced therein unless the knowledge which her husband possessed concerning the matter is imputable to her on the principle of agency and is sufficient, when imputed, to affix knowledge on her as principal. It appears in the evidence the insured transacted all of the business pertaining to the loan and the pledge of the policy. That is to say, the insured took the application for the loan to his home, the plaintiff signed it, and the insured returned it to the company. The same procedure was followed with respect to the note, and when the draft was returned, payable to both the insured and the plaintiff, the insured endorsed and conveyed it to his home, where the plaintiff affixed her endorsement and he returned it to the office of the company's agent in St. Louis, where it was cashed. After the plaintiff had signed the note, the insured likewise delivered the policy to the company as a pledge, and this, of course, was with the consent of the plaintiff. These facts certainly tend to prove an agency on the part of the insured for the plaintiff, in so far as negotiating the loan and depositing the pledge is concerned. There is not a word in proof, however, tending to show an agency of the husband thereafter, and the only circumstance relied

upon by the learned counsel as indicating a purpose on the part of the plaintiff to constitute the insured her agent thereafter, is an indorsement on the collateral note containing the contract of pledge, signifying 1224 Washington avenue, Saint Louis, as the postoffice address of the makers of the note. The evidence discloses the parties resided in the city of St. Louis; that No. 1224 Washington avenue, was the address of the Tennent Shoe Company, and the business office of the insured. The argument advanced is that by affixing her signature to the note and designating her husband's business office as a proper address, she thereby directed the insurance company to address all correspondence about the matter to her husband's office, and thus constituted him her agent for receiving notice of the sale. It appears the insured received notice that the pledge would be sold. It also appears that after the sale, he received notice stating the sale had been made and the amount realized thereon. It is conclusively established as well that the insured asserted for himself he was content to have the policy thus sold for the indebtedness, and it may be, in view of his positive statement to that effect, that he would have been estopped from thereafter asserting a claim to the policy had it increased in value in his lifetime. This may or may not be true. It does not appear that he had knowledge of all the facts which rendered the sale invalid. As to him, the question of estoppel and acquiescence is not in judgment, and therefore no opinion will be given thereon. The question with which the court is concerned is the agency of the insured for his wife, the plaintiff, for the purpose of receiving notice and as to whether or not his knowledge thereabout should be imputed to the plaintiff, and if so, whether such knowledge as he possessed, when imputed to the plaintiff, is sufficient to preclude her rights under the doctrine of acquiescence by silence. The mere designation of No. 1224 Washington avenue, St. Louis, when

considered with all other circumstances in the case, can hardly be regarded as sufficient to establish an agency on the part of the insured to receive notice of the sale and thus charge the plaintiff with knowledge affording a sufficient basis for an application of the somewhat severe doctrine which forfeits rights by acquiescence. Be this as it may, to concede for the purpose of the case that the insured was the agent of the plaintiff for the purpose mentioned, it is certain that only such knowledge could be imputed to her as her agent possessed with respect to the sale of the pledge. The insured was in nowise acting as her agent when he expressed a purpose to acquiesce in the sale of the policy. His statement was based upon an expressed inability to pay further premiums. In this connection he spoke for himself alone, and there is no effort to affix this expression of a purpose on his part against the plaintiff on the theory that he was her agent. The entire argument is directed to affixing acquiescence by silence on the plaintiff, predicated upon the doctrine of imputable knowledge, imputing the knowledge possessed by the insured in this behalf to the plaintiff. Now upon examining the matter of knowledge on the part of the insured, we ascertain that at no time was the insured informed the sale of the policy would be made, nor that it was afterwards made without public notice. It does appear, however, that he knew the sale was to be had and was had, at the company's office. Not a word or circumstance in proof discloses that the insured knew the company intended to sell, or afterwards did sell, the pledge through the form of a public sale without public notice. The sale was invalid for either one of two sufficient reasons: first, because it was in form a public sale, and without the essential prerequisite of public notice; and second, because it was had in a private office when it should have been had in a public place. Mere knowledge that the sale was invalid for one reason is insufficient to advise the pledgor to the

end of forming a competent judgment as to her rights, when it appears the sale was invalid for another reason, which was unknown to her. The proposition has been pointedly determined by a court of high authority. [Sharp v. Nat. Bank, 87 Ala. 644, 650; Jones on Pledges (2 Ed.), sec. 637b.] It may be a party, possessed of knowledge that his securities had been sold through the mere form of a public sale, presuming, of course, that public notice had been given, is willing to forego his rights and acquiesce in the result, although the sale was had in a private place, and the securities, to some extent, sacrificed; on the other hand, the same person may object with vehemence and assert his rights forthwith, upon being advised that no notice whatever was given to the public concerning the sale and that this essential prerequisite, designed to invite the world and assemble prospective purchasers to the end of enhancing the selling value by competitive bidding, had been entirely omitted. To invoke the doctrine of acquiescence, it is essential that the party against whom it is invoked shall have knowledge of all the material facts and not of a portion of such facts only. [2 Herman on Estoppel, secs. 944, 1064; Sharp v. Nat. Bank, 87 Ala. 644, 650.] By imputing, then, to the plaintiff all of the knowledge with respect to the sale possessed by her husband, it is obviously insufficient to sustain an application of the doctrine of acquiescence as against her.

The judgment will be reversed and the cause remanded with directions to the trial court to enter judgment on the policy for the plaintiff for the amount thereof, with six per cent interest thereon from the date of the institution of this suit, less her indebtedness to the defendant of $155, with interest at the rate of eight per cent per annum, from June 25, 1904. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.