St. Louis Union Trust Company, a Corporation, Respondent, v. Universal Glass Company, a Corporation, Defendant, R. H. Bellman, Appellant.*

St. Louis Court of Appeals. Opinion filed November 8, 1927.

1.—Pleading—Statutes of Another State—Evidence—Judicial Notice. A claimant of a preference cannot invoke the rule of law that the effect and validity of the transfer of pledged bonds, as well as the rights and obligations of the parties thereto, were to be determined by the laws of the State of Pennsylvania, where the laws of that State were not set out in any pleading or motion, nor sought to be introduced in evidence, nor where any decisions of the courts of last resort of that State were referred to throughout the trial, for the reason that courts do not take judicial notice of the laws of other States.

2.—Same—Same—Conferring Cause of Action—Must Be Stated With Distinctness. Where a foreign statute or statutes of another State are relied on as giving, conferring, or constituting a cause of action, they must be substantially stated with such distinctness that the court may judge their effect, and in addition the facts must be pleaded which bring the case within the purview thereof.

3.—Corporations—Foreign Corporations—Liquidation—Corporate Assets in Missouri—Nonresident Creditor—Priority of Claim—Determined by Laws of Missouri. Where all of the assets of a foreign corporation, being liquidated in Missouri, were located in the State, and the entire fund received and held by the master was the proceeds of sale of its real property located in Missouri, priority of a claim of a nonresident creditor and his rights in this fund must be determined by the laws of the State of Missouri.

4.—Pledges—Bonds—Corporate Bonds—Issued as Collateral—Purchased by Director After Default—Rights of Purchaser. Where bonds were issued by a corporation solely as collateral security upon the notes of the corporation, and where bonds in four times the face value of the loan were put up as collateral security, all of which facts were known to the purchaser of such collateral bonds, a director in the company at the time said collateral bonds were purchased by him, the purchaser's claim under the bonds was limited to the extent of the price he paid for the bonds, plus interest.

---

*Corpus Juris-Cyc. References: Contracts, 13CJ, p. 254, n. 67; Corporations, 14aCJ, p. 1022, n. 68; Evidence, 23CJ, p. 131, n. 10; Pleading, 31Cyc, p. 115, n. 41; Pledges, 31Cyc, p. 883, n. 36; Statutes, 36Cyc, p. 1241, n. 86.

Appeal from the Circuit Court of St. Louis County.—Hon. John W. McElhinney, Judge.

Affirmed.

*Joseph Dickson, Jr.,* for appellant.

(1) The pledge of $6000 bonds of the Universal Glass Company, made by it when it executed and delivered its promissory note, dated at Pittsburgh, Pennsylvania, May 7, 1923, whereby it promised to pay to C. J. Geibel, at its office in Pittsburgh, the sum of $1500 thirty days after date, was a Pennsylvania transaction whose effect and validity and the rights and obligations of the parties thereto are determined by the laws of the State of Pennsylvania. Beach on Contracts, sec. 584; Johnson v. Gawtry, 83 Mo. 339; Tennant v. Insurance Co., 133 Mo. App. 345; Morris & Whitehead v. East Side Ry. Co., 104 Fed. 409 (Ore.); Miss. Valley Trust Co. v. Ry. Steel Spring Co., 258 Fed. 346 (Mo.). (2) In Pennsylvania a corporation has power to pledge its bonds for less than their face value as security for a corporate debt, and bonds so pledged are bonds "issued" as contemplated by Article 16, section 7 of the Constitution of Pennsylvania, providing that "no corporation shall issue stock or bonds except for labor done or money or property actually received." Cook on Corporations (8 Ed.), secs 763, 766; Miller v. Distilling Co., 57 Pa. Sup. Ct. 183; Rogers, Brown & Co. v. Tindel Morris Co., 271 Fed. 475 (Pa.); In re Sharon-Walker Co., 7 Fed. (2 Ed.) 475. (3) Where the note authorized the holder, upon nonpayment at maturity, to sell the collateral at private sale without notice, such sale, when made in good faith, was valid and divested the title of the pledgor. The requirement of notice of the time and place of sale may be waived by agreement of parties. Jones on Collateral Securities (3 Ed.), secs. 610, 613b, 635, 639a, 732; Appeal of Jeans, 116 Pa. St. 573, 11 Atl. 862. (4) Mere notice to the purchaser at a sale of collateral that the collateral was pledged at less than its face value is not sufficient to prevent his being treated as a holder in due course. He must be shown to have had notice of some inherent illegality in the transaction and the burden is on the pledgor to show bad faith in the purchaser. Cook on Corporations (8 Ed.), sec. 763; Mercer v. Steil, 117 Atl. 689, l. c. 691 (Conn.). (5) A purchaser of bonds at a pledgee's sale, though the pledge was by the company issuing the bonds and the price obtained at such sale was low, may enforce collection of such bonds at their face value. Cook on Corporations (8 Ed.), sec. 763; Mercer v. Steil, 117 Atl. 689 (Conn.); Rogers Brown & Co. v. Tindel Morris Co., 271 Fed. 475 (Pa.); Turner v. Metropolitan Trust Co. (In re Western Steel Co.), 207 Fed. 495 (Wash.); Colonial Trust Co. v. Central Trust Co., 243 Pa. 268, 90 Atl. 189; Miller v. Distilling Co., 57 Pa. Sup. Ct. 183; Shafer v. Sparks, 226 Fed. 922 (Pa.). (6) Nor is the director of a corporation who purchased at a sale of collateral pledged by the company denied the rights of any other purchaser if he acted fairly and openly and

violated no duty owed by him to the corporation. Fletcher on Corporations, sec. 2294; Watts' Appeal, 78 Pa. St. 370.

*Bryan, Williams & Cave* for respondeht.

*Harry W. Castlen*, of Counsel.

(1)   Bellman's claim was heard before the court without a jury, and there were no declarations of l'aw asked or refused and no findings of fact requested.   Under this state of the record the Appellate Court will determine only whether the general finding of the trial court can be sustained under any permissible view of the evidence. Lumber Co. v. Hill, 242 S. W. 427; Missouri Gas & El. Co. v. Milling Co., 279 S. W. 727. (b)   The assignments of error in appellant's motion for new trial and in this court are too general to preserve anything for appellate review.   (2)   No matter what powers of sale are given to a pledgee under a collateral pledge contract, he must execute such powers with fairness to the pledgor.   This means that he must sell the collateral in good faith and for the best price obtainable. Such a sale necessarily implies a sale for cash.   Hagan v. Bank, 182 Mo. 319.   (3)   Where the unissued bonds of a corporation, secured by a mortgage upon the corporate property, are pledged by it as collateral for its own note, the amount of the bonds so pledged as collateral is only important in determining the extent to which the creditor may participate in the proceeds of the mortgage security. Dibert v. D'Arcy, 248 Mo. 617; Mississippi Valley Trust Co. v. Railway Steel Spring Co., 258 Fed. 346; In re Waddell-Entz Co., 67 Conn. 324; Matthews v. Trust Co., 192 Fed. 557; Bank v. Railroad, 122 Mass. 240.   (4)   In determining the distribution of the proceeds of the sale of real property, which was located in Missouri, and the rights of the creditors therein, the law of Missouri must govern. 14 Ruling Case Law 653; Wylie v. Speyer, 62 N. Y. Prac. (Howard) 107; Turnbull v. Cole, 25 A. L. R. (Colo.) 1149; Holzhauser Co. v. Copper Company, 70 L. R. A. (N. C.) 183.

BECKER, J.—In July, 1921, the board of directors of the Universal Glass Company, a Delaware corporation, whose principal office was in Pittsburgh, Pennsylvania, authorized the pledge of its bonds. (held in its treasury and theretofore unissued) secured by mortgage on its property, located at Valley Park, Missouri, as collateral for a loan to the company, the bonds so pledged to be "not more than four times the amount of the loan."   The appellant, R. H. Bellman was at the time a member of the board of directors of said Universal Glass Company.   In November, 1921, one Charles J. Geibel of Butler, Pennsylvania, loaned to the company $7500 on its note secured by $30,000 par value of its bonds.   Upon the maturity of the note,

the loan was reduced to $2500, and a subsequent payment of $1000 further reduced the loan to $1500, for which the company gave Geibel its note with $6000 of its bonds as collateral. This note, dated at Pittsburgh, Pennsylvania, May 7, 1923, promised payment to Geibel at 603 First National Bank Building, Pittsburgh, Pennsylvania (the company's office), thirty days after date, the note further reciting that the $6000 bonds were pledged to secure this indebtedness, as well as any other liability of the company to him, and that Geibel had full power and authority, if the note was not paid when due, to sell the bonds at public or private sale, without demand, advertisement or notice, with the right to purchase them himself, and to use the proceeds to satisfy the indebtedness of the company to him. There was also due to Geibel from the company at that time a commission of $500 on account of sales of real estate belonging to the company, according to the minutes of the meeting of directors held December 19, 1922.

When this note, dated May 7, 1923, became due and demand for its payment was not met, Geibel directed one B. H. McNey, a broker, through whom the original loan of $7500 was made, to notify the company that the collateral would be sold to satisfy the indebtedness of the company to him. McNey gave both oral and written notice to that effect, the latter being in the form of a letter to the company, dated September 1, 1923. There being no response, McNey thereupon undertook the sale of the collateral for Geibel, soliciting offers from brokers in Pittsburgh and from the officers and directors of the company. For more than a month after giving this notice to the company, dated September 1, 1923, he was unsuccessful in his efforts to find a purchaser for the bonds. Finally he negotiated with R. H. Bellman, appellant here, and at the time a director of the company, who agreed to buy the bonds if he could pay for them with his notes. Geibel, on or about October 15, 1923, sold the $6000 bonds to Bellman for $2400, taking Bellman's notes in payment. The $1500 note of the Universal Glass Company, dated May 7, 1923, with the words "Collateral sold at figure to cover amount of indebtedness," written across the face thereof, was introduced in evidence at the trial, and according to the testimony of the appellant, Bellman, was found by him in the files of the Universal Glass Company when the company went out of business, which was some time prior to the trial. In addition to this note for $1500 and the commission of $500, above referred to as due Geibel, there was unpaid interest and the broker's commission and expenses of sale to be met, which, altogether, made up the full amount of $2400 realized from the sale of the collateral. No objection was ever made to this sale by the company, whose board of directors were notified by both Bellman and Geibel of this purchase by Bellman.

When the loan was first made by Geibel to the company, in 1921, he had deposited with his bank, the Guaranty Trust Company of Butler, Pennsylvania, the bonds pledged with him as collateral, and when the remaining $6000 of these bonds were sold by him to Bell-man, following the Glass Company's failure to pay the $1500 note, the trust company had notice of the change of ownership and retained custody of them by agreement with Geibel and Bellman as security for the balance of the purchase price due from Bellman to Geibel, as well as other indebtedness of Bellman to Geibel resulting from the purchase of some stock. This balance Bellman reduced by payments from time to time to the sum of $1725, for which amount Geibel now holds Bellman's note. This note and the $6000 bonds were in the possession of the Guaranty Trust Company of Butler until these bonds were forwarded to the Special Master in this cause by the trust company, at the request of Bellman, whose affidavit of claim for payment for the amount due thereon was also filed with the Master. The Special Master filed a report recommending that the court disallow the claim of Bellman as the owner of these bonds. Bellman excepted to the report, reaffirming in the circuit court his right as purchaser in good faith and for a valuable consideration of the $6000 bonds of the Universal Glass Company owned by him, to be paid, as were all other owners of these bonds, the par value thereof, together with interest due thereon, in, to-wit, the sum of $7306.66. The circuit court allowed Bellman the sum of $2400 on his claim, with interest at six per cent per annum from October 15, 1923. Bellman in due course appeals.

The assignments of error may be condensed into one, namely, that the trial court erred in its judgment, finding, order, and decree in sustaining Bellman's exceptions in part only and allowing him but $2400 with interest, instead of sustaining his exceptions in full and allowing appellant Bellman the full amount of his claim, namely, $7306.66, which is the aggregate sum of the par value of $6000 of Universal Glass Company bonds owned and held by him with un-paid coupons thereto attached, together with interest.

It is contended here on behalf of the appellant that the pledge of the $6000 bonds of the Universal Glass Company made by it when it executed and delivered its promissory note, dated at Pittsburgh, Pennsylvania, May 7, 1923, whereby it promised to pay to C. J. Geibel at its office in Pittsburgh, the sum of $1500, thirty days after date, was a Pennsylvania transaction whose effect and validity, as well as the rights and obligations of the parties thereto, are determined by the laws of the State of Pennsylvania. We are in accord with that statement as an abstract proposition of law. An examination of the record before us shows no setting out of any constitutional provision or statutes of the State of Pennsylvania in any pleading or motion, nor

does it appear that any such constitutional provision or statutes were sought to be introduced in evidence, nor that any decisions of the courts of last resort of that State, were ever referred to throughout the trial. Such being the record in this case the appellant cannot invoke this rule of law, nor obtain any benefit from any provision of the constitution or statutes of the State of Pennslyvania, for the reason that courts do not take judicial notice of the laws of other states, and it is a trite doctrine that where a foreign statute or statutes of another State are relied on as giving, conferring, or constituting a cause of action, they must be substantially stated with such distinctness that the court may judge their effect, and the facts pleaded which bring the case within the purview thereof. [Gibson v. Ry. Co., 225 Mo. 473, 125 S. W. 453, and cases cited therein; Tennent v. Ins. Co., 133 Mo. App. 345, 112 S. W. 754; Johnston v. Gawtry, 83 Mo. 339; Johnston v. Gawtry, 11 Mo. App. 322.]

The respondent in support of its contention that the rights of appellant, Bellman, in this fund must be determined by the laws of this State, calls attention to the fact that all the assets of the Universal Glass Company were located in St. Louis County, Missouri, and the entire fund received and held by the master was the proceeds of sale of real property located in St. Louis County, Missouri; that Missouri is the forum in which the fund is held and the fund is derived entirely from the proceeds of the sale of Missouri real property. The proceeding in this case was instituted for the sole purpose of foreclosing Missouri real estate pledged under a mortgage deed of trust. While the bondholders are scattered over the country, there are a large number of unsecured claims presented to and allowed by the master, the payment of which is contingent upon the method of distribution of this fund. The great majority of these general creditors, whose rights are involved, are citizens of Missouri. Under this state of facts the rule is laid down in 14 R. C. L. 653:

"A nonresident creditor, though he is not required to present his claim and is not bound by the insolvency proceedings if he ignores them, may nevertheless at his election, file a claim and receive à dividend thereon. But the priority of his claim is to be determined by the laws where the estate is administered; the fact that he is entitled to prior payment under the laws of the State of his residence will not give him that privilege under the laws of the State distributing the insolvent's property."

Storey in his work on "Conflict of Laws," page 583, says:

"Priorities and privileges are indeed generally treated as belonging to the form and order of proceedings and are therefore governed by the *lex fori* and they are not treated as belonging to the merits and matters of decision."

In the case of Wylie v. Speyer, 62 N. Y. Practice Reports (Howard) 107, the facts were that bonds and coupons of a corporation were stolen and were later sold in Germany after maturity to a bonafide purchaser. The purchaser sent the coupons to New York for collection. When the corporation was about to pay out the money to the purchaser, however, the original owner brought an injunction against the corporation and the agent of the German purchaser of the bonds to restrain payment of the bonds to the German purchaser. Under the laws of New York the purchaser received no title, for he had bought them after maturity, but under German law, where the purchase was made, the purchaser acquired a valid title. The court, in passing on this question, said:

"But the rights of these parties must be determined by the law as it obtains in the forum in which the action is brought."

There are many cases holding that even though a contract may be valid in the State where it is made, such contract will not be enforced in another State if the contract is contrary to the statutes or public policy of the State of the forum or where it would work an injustice to the state or to its citizens. [See Turnbull v. Cole (Colo.), 25 A. L. R. 1149; Holzhauser Co. v. Copper Co., 138 N. C. 248, 70 L. R. A. 183.]

Admittedly the bonds in question which were put up as collateral security for the indebtedness of the Glass Company to Geibel, were unissued, otherwise than is implied by their delivery as collateral security upon the notes of the corporation held by Geibel; and Bellman, the appellant here, himself testified that he was a director of the Glass Company on July 26, 1921, on which date he was present at a meeting of the board of directors of said company and moved the adoption of a resolution which authorized and directed the executive officers of the Glass Company, if possible, "to secure a loan or loans under the best terms that can be had, offering bonds of the Universal Glass Company as collateral security, in not more than four times the amount of said loan or loans, . . ." which resolution was duly adopted, and that it was under the authority thereby given that the bonds in question were put up as collateral security to the loan obtained from Geibel. And Bellman, the appellant, further testified that he continued to be a director of the company up to and including October 15, 1923, the date on which he purchased the said bonds held as security for Geibel's note, and that he knew that the $6000 of bonds had been pledged by the Glass Company to Geibel as collateral security for a loan of $1500, and that he was buying these same bonds, and that he was aware that the company had defaulted on the interest due on said loan on August 1, 1923, and further that in making the purchase of these bonds, he did so by giving his own notes therefor aggregating $2400.

We are of the view that what has been ruled by our Supreme Court in the case of Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1116, disposes of the points here at issue adversely to the appellant. Speaking there on the character of pledge of bonds put up by corporations as collateral security upon notes of the corporation, the court held that the bonds there in question were, "unissued otherwise than is implied by their delivery as collateral security upon the notes of the corporation.

"Considering them in the light of a mere additional promise of the maker of the notes to pay money, they cannot, from the very nature of the transaction, be considered as collateral security for the debt, for this would lead to the absurd result that one might make his promissory note for one dollar with a collateral note for two dollars, so that if he should be unable or fail to pay, the sale of the collateral would have simply the effect to double the amount of his indebtedness, without affording any additional security for the debt other than a penalty for its nonpayment. Should he, however, secure the second note by mortgage upon property, a different proposition would be presented. Under such circumstances the note and mortgage may be treated as collateral to the indebtedness so far as is necessary to give the creditor in the first note the benefit, with respect to his indebtedness, of the lien upon the mortgaged property nominally created as security for the collateral note. [In re Waddell-Entz Co., 67 Conn. 324, and cases cited; Easton v. Bank, 127 U. S. 532.] We do not wish to be understood as considering what rights an innocent purchaser for value might acquire by the purchase of negotiable securities placed in circulation through such a channel. We only say that as between the pledgor and pledgee and those having notice of the character of the transaction, its only effect is to give the pledgee the benefit of the lien of the mortgage for the collection of his own debt. The amount of the mortgage obligations that he may have as collateral, is only important in determining the extent to which his own debt may participate in the proceeds of the mortgage securities."

[See, also, Cook on Corporation (8 Ed.), sec. 763, p. 3404; Hudge v. Black, Sheridan & Wilson, 224 Fed. 919, and cases cited therein; Kemmerer v. Furnace Co., 212 Fed. 63.]

What the rule may be under these circumstances in other jurisdictions is beside the point in that we are bound to follow the last ruling of our Supreme Court. Where, as here, it is admitted that the bonds were issued by the corporation solely as collateral security upon the notes of the corporation, and that bonds in four times the face value of the loan had thus been put up as collateral security, all of which facts were admittedly known to the purchaser of such collateral bonds, a director in the company at the time the said collateral bonds were purchased by him, falls within the ruling of the

Dibert case, supra, and on the authority thereof we must rule that the learned trial court properly limited the purchaser's claim under the bonds, to the extent of the price he had paid for the bonds, plus interest. It follows that the judgment should be affirmed. It is so ordered. *Daues, P. J.,* and *Nipper, J.,* concur.