# Sharpe *v.* National Bank of Birmingham.

*Action on the Case for Conversion of Certificates of Stock.*

1. *Count construed to be in case, and not in assumpsit.*—A count which claims damages of the defendant, for that whereas, plaintiff having procured a loan of money from defendant, and pledged certain shares of stock as collateral security, defendant undertook and promised, in consideration thereof, to hold said stock only as collateral security, and not to convert the same to his own use, nor to sell the same without notice to plaintiff; but, not regarding said promise and undertaking, and intending to injure and defraud plaintiff, defendant afterwards converted said stock to his own use, and sold the same without notice to plaintiff, whereby said shares of stock were lost to plaintiff, and he was damaged as aforesaid,—though informal, is a good count in *case*, and not in *assumpsit*.

2. *Error without injury in refusing to allow amendment.*—The refusal to allow an amendment of the complaint, by the addition of another count, if erroneous, is not a reversible error, when the record shows

[Sharpe v. Nat. Bank of Birmingham.]

that the plaintiff's case was tried on the original complaint precisely as it would have been if the amendment had been allowed.

3. *Pledge of stock as collateral security; remedies of pledgee.*—When shares of stock in a private corporation are pledged as collateral security for a debt, and default is made in the payment of the debt at maturity, the pledgee may file a bill in equity to foreclose the pledge by a sale under the order of the court, or he may exercise the implied power to sell without resorting to judicial proceedings; but, if he elects to pursue the latter remedy, the sale must be at public auction, in the absence of a special agreement, and reasonable notice must be given to the pledgor; and if he sells privately, without notice, becoming himself the purchaser, the relation between him and the pledgor is not thereby dissolved.

4. *Same; ratification of authorized sale.*—If the pledgor, when notified of the irregular or unauthorized sale, accepts its benefits, giving his note for the balance of his debt remaining unpaid, this is presumptively a ratification of the sale, and he can not afterwards impeach it; but, if he acted in ignorance of the fact that the pledgee himself was the purchaser, and did not intend to make an absolute and unconditional ratification without regard to the facts attending the sale, he may disaffirm it within a reasonable time after discovering that the pledgee was the purchaser.

5. *Pledge of stock by part-owner; estoppel between pledgor and pledgee.* If a part-owner of certificates of stock pledges them, with the consent of the other owner, as collateral security for his own debt, and they are converted by the pledgee, the pledgor is entitled to recover as if he were the sole owner, the pledgee being estopped from denying his absolute ownership.


APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. LEROY F. BOX.

This action was brought by Thomas Sharpe, against the National Bank of Birmingham, and was commenced on the 29th October, 1883. The first count of the complaint claimed $15,000 damages, for that whereas, in the spring of the year 1878, the defendant loaned and advanced $1,200 to plaintiff, in consideration of plaintiff's promise and agreement to repay the same, as and when it became payable; and whereas plaintiff was the owner of twenty shares of the capital stock of the Newcastle Coal and Iron Company, a corporation organized under the laws of Alabama, of great value, which, at the special instance and request of the defendant, he then and there transferred and delivered to defendant, to be held by said defendant in pledge as collateral to secure the payment of said loans and advances; the defendant, in consideration of the premises, then and there undertook and promised to plaintiff that it, said defendant, would hold said shares of stock only in pledge to secure the payment of said loans and advances, and would not convert the same, or any part thereof, to its own use, and would not sell the same, or any part thereof, without first notifying plaintiff of its intention to sell the same, and affording him

[Sharpe v. Nat. Bank of Birmingham.]

an opportunity to advise and aid in effecting such sale: "Now plaintiff avers that said defendant, not regarding its promise and undertaking aforesaid, but in violation thereof, and contriving and intending to injure, defraud and oppress plaintiff, did not nor would hold the said shares of stock only in pledge to secure the payment of said loans and advances, but afterwards, to-wit," &c., "converted said shares of stock to its own use, and sold the same, without first notifying plaintiff of its intention to sell the same, and affording him an opportunity to aid or advise in effecting said sale; whereby said shares of stock, being of the value aforesaid, became and were wholly lost to plaintiff, and he was damaged $15,000; wherefore he sues." Another special count, in the same form, claimed damages on account of the conversion by the defendant of the dividends on the stock alleged to have been received.

The court overruled a demurrer to the entire complaint, and to each count separately, but refused to allow the plaintiff to amend by adding a formal count in case; to which ruling the plaintiff excepted. After protracted pleadings, which it is not necessary to set out, the main defenses were, 1st, a general denial of liability; and, 2d, that plaintiff had ratified the sale of the stock, with knowledge of the facts. The facts of the case, and the rulings of the court in the charges given and refused, are stated in the opinion of the court. The plaintiff appeals, and assigns as error all the rulings of the court to which he reserved exceptions.

W. G. HUTCHESON, JAMES WEATHERLY, and WARD & HEAD, for appellant.—(1.) The plaintiff might have waived the tort, and sued for money had and received, but he did not: on the contrary, he declared in case for the wrongful sale or conversion of his stock, and was entitled to recover its highest value up to the time of the trial. The original complaint being in case, the amended count, which was strictly formal, ought to have been allowed.—*Life Insurance Co. v. Randall*, 74 Ala. 170; *Whilden & Sons v. M. & P. Nat. Bank*, 64 Ala. 1; 11 Amer. & Eng. R. R. Cases, 92. (2.) Whether the parties occupied towards each other the relation of mortgagor and mortgagee, or that of pledgor and pledgee, the sale of the stock by the defendant was equally unauthorized, and did not change their relative rights and duties. If a mortgagee becomes the purchaser at his own sale, it will be set aside on the timely application of the mortgagor,

[Sharpe v. Nat. Bank of Birmingham.]

without regard to its fairness, or the fullness of the price paid.—*Cooper v. Hornsby*, 71 Ala. 62; *Garland v. Watson*, 74 Ala. 323; *McLean v. Pressley*, 56 Ala. 211; *Knox v. Armistead*, at present term, *ante*, p. 495. If the deposit of the stock constituted a pledge, the defendant had no right to sell without giving notice of his intention, in order that the plaintiff might have an opportunity to protect his own interests.—Jones on Pledges, §§ 602, 614, 721; Story on Bailments, §§ 308–10; 2 Kent's Com. 582; 4 *Ib.* 138–40; *Nabring v. Bank*, 58 Ala. 204; 2 N. Y. 443. (3.) The sale has never been ratified; for there can be no binding ratification without full knowledge of the facts, and while the plaintiff knew, of course, that the sale was made without notice to him, there is no pretense that he was informed of the purchase by the defendant.—*Andrews v. Hobson*, 23 Ala. 213; *Clark v. Taylor*, 68 Ala. 453; *Chapman v. Lee*, 47 Ala. 143; *Holt v. Agnew*, 67 Ala. 368; *Steinhart v. Bell*, 80 Ala. 208; Wharton on Agency, § 65; Story on Agency, § 529. (4.) The defendant was estopped from setting up the interest of Worl in the stock.

HEWITT, WALKER & PORTER, *contra.*—(1.) The original complaint was in *assumpsit*, while the proposed amendment was in *case*; and it was therefore properly disallowed.—*Insurance Co. v. Randall*, 74 Ala. 170; *Wilkinson v. Moseley*, 18 Ala. 288; *Bank v. Hudgins*, 3 Ala. 206; *Mardis v. Shackelford*, 4 Ala. 493; *Cook v. Bloodgood*, 7 Ala. 683; *Chambers v. Seay*, 73 Ala. 372; *Wilson v. Stewart*, 69 Ala. 302. (2.) In order to effect a valid sale of a pledge, the law does not require that the pledgee shall first demand of the pledgor to redeem, nor that the sale shall be at public auction. *Bryson v. Rayner*, 90 Amer. Dec. 69; *Fire Ins. Co. v. Dalyrymple*, 89 Amer. Dec. 779. (3.) The plaintiff received the benefit of the sale without objection, knowing how the proceeds were applied; and this, with his long acquiescence, estops him from now complaining of it.—*Gilmer v. Morris*, 80 Ala. 78; *Oil Co. v. Marbury*, 91 U. S. 587; 31 Penn. St. 161.

CLOPTON, J.—Before the trial was entered upon, plaintiff moved to amend the complaint by adding a count, formally and substantially, in case. The court refused to allow the amendment, evidently on the idea that the original complaint counts on a breach of the contract, and is in *assump-*

[Sharpe v. Nat. Bank of Birmingham.]

*sit.* In cases where the plaintiff has an election to sue in *assumpsit* for a breach of the contract, or to bring an action on the case, for a violation of duty growing out of the contract, it is often difficult to determine whether a count is in form *ex contractu* or *ex delicto.* The same facts have to be averred substantially in both instances, the difference being, that in one the complaint declares on the contract, and assigns breaches of the contractual stipulations; and in the other, the contract is stated as mere inducement, and the cause of action is founded on a breach of duty growing out of the contract, and imposed by law. In *Whilden v. Mer. & Plant. Nat. Bank,* 64 Ala. 1, the test is stated as follows: "It is from the facts stated in the body of the count the question must be determined; and when these indicate that the plaintiff is proceeding for a measure of recovery adapted only to the one form of action, it must be intended that the count belongs to that form of action, whether it is *ex delicto* or *ex contractu.*" Though the transaction may have had its origin in a contract, if the facts stated show that the cause of action is a violation or disregard of duties which the law implies from the contractual relations and conditions of the parties, the count will be regarded as in case.—*Mo. Life Ins. Co v. Randall,* 74 Ala. 170. The test of certain and easy application is, the measure of recovery to which the count is adapted

It may be conceded that the counts in the original complaint are not formally and technically in case. After stating the pledge contract, inapt words are used to aver the duties growing out of the contract, which the law devolved on defendant; such as, "the defendant, in consideration of the premises, then and there undertook and promised the plaintiff," followed by averments of violation and disregard of the legal duties which devolved on defendant as pledgee. But, considering all the averments, it seems that the contract is stated as inducement, and that the pleader did not intend by these words to allege that what follows them were express stipulations of the contract, but duties implied by law. The counts do not proceed for the recovery of the excess of the proceeds of the sale of the stock pledged, but for its value, as the measure of recovery. The amendment should have been allowed. Its refusal, however, would not operate a reversal, as it appears from the record that the whole case was tried as if the action was in form *ex delicto.* The plaintiff having had the same and as full benefit under the com-

plaint is it stood, as if the amendment had been allowed, we regard its rejection as error without injury.

The undisputed facts are: About February, 1878, the plaintiff placed with the National Bank of Birmingham twenty shares of the capital stock of the Newcastle Iron and Coal Company, as collateral security for debts due the bank, and its president individually. The debts were renewed or extended from time to time, the stock remaining in pledge. In October, 1879, the demands having matured, the president of the bank instructed the cashier to give the plaintiff par for his stock, credit him for the amount, and render him a statement of his account. The sale was private, and no notice thereof was given to the plaintiff, nor was there any demand of payment.

When the debt for which shares of stock are pledged matures, and is unpaid, the pledgee may file a bill in equity for a foreclosure of the pledge, and a sale under the order of the court, or he may exercise the implied power to sell without resorting to judicial proceedings. If he elects to pursue the latter remedy, the law requires, in the absence of an agreement, that the sale shall be made at public auction, and reasonable notice of the time and place given to the pledgor, that he may have opportunity to redeem the pledge. If there is a stipulated day for payment, demand of payment is not required; notice of the sale being considered as equivalent to a demand.—*Nabring v. Bank of Mobile,* 58 Ala. 204. The sale of the stock, having been made privately, and without notice, was inoperative to transmute the title, or to dissolve the relation of pledgor and pledgee, the bank being the purchaser; and retaining its possession. *Md. Fire Ins. Co. v. Dalrymple,* 25 Md. 242; *Middlesex Bank v. Minot,* 4 Met. 325; Cook on Stock, §§ 477-479.

These principles are not controverted; but defendant contends, that plaintiff, with knowledge that the sale was unauthorized and inoperative, ratified it. The ratification is claimed on the undisputed facts, that in December after the sale, plaintiff was informed that his stock had been sold at par, received a statement of his account, showing a credit of the proceeds of the sale, and a few days afterwards, without objection or further inquiry, settled with the bank by giving his note for the unsatisfied balance due by him. Unquestionably, plaintiff had the right, at his election, to ratify the sale, and receive the benefit of the credit of the proceeds, thereby relieving it of any imputation of tortiousness, or to treat

[Sharpe v. Nat. Bank of Birmingham.]

it as futile, and be remitted to his rights, as they existed before the attempted sale. By giving his notes for the deficiency, after deducting the proceeds, without objection, and after being informed and receiving his account, was a ratification, if the other essential elements existed.—*Childs v. Hugg*, 41 Cal. 519.

Plaintiff, admitting that he knew his stock had been sold, and that notice of the sale was not given, seeks to avoid the ratification on the alleged ground, that it was made in ignorance of the fact that the bank was the purchaser, and that it was a private sale by the bank to itself. Defendant does not claim or pretend that this fact was communicated to plaintiff, or that he was otherwise informed of it at the time of the alleged ratification. As to this question, the court instructed the jury, that if, at the time the sale was reported to plaintiff, it was impeachable, and he knew it was impeachable, and elected not to impeach it, but to accept and enjoy its benefits, he can not now impeach the sale. When referred to the evidence, the charge imported to the jury, that if plaintiff had knowledge of the invalidity of the sale, on the ground only that the notice of the time and place had not been given, and elected to assent to and ratify it, he can not afterwards disaffirm it, though he was not informed that the pledgee became the purchaser at a private sale.

The salutary doctrine, that trustees and others, holding fiduciary relations, are incompetent to purchase the trust property at their own sales, applies with full force to pledges. Knowledge of all the material facts and circumstances is essential to an efficient and valid ratification of a sale made by a pledgee in disregard of the requirements of the law, and of the rights of the pledgor. It is readily supposable, that a pledgor might be willing to abide by a sale, though made without notice, and even a private sale, if made in open market, where there may be competition, and yet be unwilling to assent to a sale made by the pledgee to himself, without affording others an opportunity to buy. A confirmation, to be effectual and binding must be tantamount to a valid and binding agreement. Partial knowledge of the facts is insufficient; and knowledge of some of the grounds on which a sale may be avoided, there being others, is not the equivalent of information of all the material facts necessary to enable the party to form a correct judgment.

The ratification may be subject to objections and disabil-

[Sharpe v. Nat. Bank of Birmingham.]

ities, as well as the attempted sale; and is so subject, if made in ignorance of some of the material facts, unless it was done with the intent to ratify, irrespective of the character of the sale, and of who was the purchaser. When plaintiff received information of the material facts of which he was ignorant at the time he ratified the sale, he was entitled to disaffirm the ratification.—*Bannon v. Warfield*, 42 Md. 22; *Miller v. Board of Ed.*, 44 Cal. 166. If promptly disaffirmed, the disaffirmance would relate back, and operate to avoid the sale. On the case as presented by the record, the real matter of controversy between the parties arises at this point. The entire case would be simplified, and rendered easier of solution, if, assuming the uncontroverted facts, the investigation of the jury were directed to the inquiries, whether the ratification in December, 1879, was made with the intent to ratify without full knowledge of all the material facts; and if not, of ratification *vel non* after plaintiff received information of the character of the sale and the purchase by the bank. The evidence leaves in doubt the time when plaintiff obtained this information, and consequently it is an inference to be drawn by the jury. Having once ratified, it was especially incumbent on plaintiff, on obtaining information of these material facts, to act with promptness, and without unreasonable delay. Having assented to the sale, and having recognized it as valid and operative, by obtaining and retaining its benefits, he will not be permitted to continue to retain them, acting inconsistently with the repudiation of his former ratification, speculating upon the consequences of affirmance or disaffirmance, and inducing the defendant to regard it as in force, for an unreasonable time, and then repudiate it, when it may suit his convenience or advantage. Unreasonable and undue acquiescence, under circumstances, is tantamount to a ratification.

It is admitted that Linn, the president of the bank, died in August, 1882; and there is evidence tending to show that plaintiff was informed of the facts prior to his death. If the jury should so find, and further find that he retained the benefits of the sale, without objection brought home to defendant until shortly prior to the commencement of this suit, in October, 1883, his former ratification should be regarded as unimpeachable. But, if he did not receive the information until the spring or summer of 1883, the question of ratification should be submitted to the jury, to be determined by the conduct of the plaintiff, and on the entire evidence.

[Hughes v. Hughes.]

It appears that L. P. Worl owned a part interest in the stock, which was pledged by plaintiff, for his individual benefit, by Worl's authority and consent. The pledge, under such circumstances, did not create any relation of pledgor and pledgee between defendant and Worl, and devolved on defendant no duty to him. The relation existed alone between plaintiff and defendant, and estopped the latter from disputing the title of the former. If plaintiff is entitled to recover, his right of recovery extends to the entire stock pledged.

Reversed and remanded.