(103 So. 543)

PERSONS et al. v. RUSSELL et al.
(3 Div. 689.)

(Supreme Court of Alabama. March 19, 1925.)

1. **Pledges** ⬅1—**Pledgee is trustee to conserve and apply proceeds of pledge to payment of debt, and to account to pledgor for surplus, or surrender pledge if debt is paid.**

Pledge creates form of trust, and in equity pledgee is trustee to conserve and apply proceeds of pledge to payment of debt secured, and to account to pledgor for any residue, or surrender pledge if debt is otherwise paid.

2. **Pledges** ⬅56(1)—**In absence of contract or matters rendering it inequitable, pledgee may, after default, sell pledge at public auction after notice.**

In absence of contract or matters rendering it inequitable, pledgee may, after default, sell pledge at public auction, after notice required by Code 1923, §§ 6745, 6746.

3. **Pledges** ⬅56(6)—**Equity will avoid sale at which pledgor buys, at election of pledgor, without regard to fairness or adequacy of price.**

Equity, at election of pledgor, will avoid pledgee's purchase at his own sale without pledgor's consent, without regard to question of fairness in conduct of sale or adequacy of price.

4. **Pledges** ⬅56(6)—**Sale of pledge to pledgee passes title until pledgor disaffirms sale.**

Purchase of pledge by pledgee at his own sale is not void, but passes title until pledgor disaffirms sale.

5. **Pledges** ⬅56(8)—**To disaffirm pledgee's sale to himself, pledgor must offer to do equity.**

To disaffirm pledgor's purchase at his own sale, pledgor must offer to do equity, which usually requires offer to redeem by payment of secured debt.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Pledges ☞56(8)—Pledgee buying pledged collateral securities and collecting them is required to account for residue after payment of debt.**

Where pledgee, without consent of pledgor, buys pledged collateral securities at his own sale and afterwards collects them, he may be required in equity to account for pledgor for residue after payment of debt.

**7. Pledges ☞56(8)—Party entitled to disaffirm sale of pledged property to pledgee must act within two years.**

Where mortgagee, pledgee, or other trustee, without authority, becomes purchaser at own sale, party entitled to disaffirm must act within such reasonable time as shows due diligence, which, in case of purchase by pledgee, is two years.

**8. Pledges ☞56(8)—Postponement of right to disaffirm sale to pledgee for more than two years, in absence of cause for further delay, bars relief.**

In absence of averment and proof of good cause for further delay, postponement beyond two years of action to disaffirm pledgee's sale of pledged goods to himself without authority is laches barring relief.

**9. Pledges ☞56(8)—Want of knowledge or notice of facts entitling pledgor to disaffirm is good cause for delay to sue to disaffirm sale of pledged goods to pledgee.**

Want of knowledge or notice of facts entitling pledgor to election to disaffirm pledgee's sale of pledged goods to himself, such as notice of sale and purchase by pledgee, is good cause for delay for over two years to sue to disaffirm.

**10. Pledges ☞56(8)—One suing to disaffirm sale of pledged property to pledgee must exercise reasonable diligence to be excused from laches.**

One suing to disaffirm pledgee's sale of pledged property to himself is required to exercise due diligence in making inquiry to be excused from laches, and whatever is sufficient to excite his attention and put him on inquiry is notice of everything to which inquiry would lead.

**11. Pledges ☞56(8)—Pledgor suing to disaffirm sale of pledged bonds held put on inquiry and barred by laches.**

Pledgor of bonds, which administrator of pledgee bought at his own sale, *held* put on inquiry, and his suit to disaffirm sale barred by laches.

**12. Trusts ☞44(1)—Evidence held not to show creation of express parol trust at making of pledge.**

In suit by pledgor of bonds to disaffirm sale by administrator of pledgee to himself, evidence *held* not to show parol agreement to hold bonds in trust for foreclosure of bond mortgage and full liquidation of affairs of corporation issuing bonds.

**13. Executors and administrators ☞163—Sale of pledged bonds by administrator of pledgee to himself, made on legal advice as part of proceeding to collect, held colorable or fraudulent.**

That sale of pledged bonds by pledgee's administrator to himself was made on legal advice as part of proceeding to collect, in view of probable expenses and delay in finally getting money on them, did not show sale was colorable or fraudulent or with no intention to change relation of pledgor and pledgee.

**14. Executors and administrators ☞163—Fact that purchase money bid at sale of pledged bonds was not paid in and bonds remained in hands of pledgee's administrator held not to invalidate sale to administrator.**

That purchase money bid at sale of bonds pledged by pledgee's administrator to himself was not paid in, and bonds remained in hands of administrator, does not invalidate sale as to pledgor; question whether purchase on behalf of estate should be approved, or whether administrator should be required to take bonds individually, being at election of heirs.

Appeal from Circuit Court, Lowndes County; Arthur E. Gamble, Judge.

Bill in equity by Jo. R. Persons and Charles Schuessler against William Payne Russell, as administrator of the estate of W. P. Russell, deceased, and others. From a decree dismissing the bill, complainants appeal. Affirmed.

Harry T. Smith & Caffey, of Mobile, and Steiner, Crum & Weil, of Montgomery, for appellants.

The relationship between a pledgor and pledgee of collateral security is fiduciary. Keeble v. Jones, 187 Ala. 207, 65 So. 384; Sharpe v. Bank, 87 Ala. 644, 7 So. 106; 31 Cyc. 825. The sale by the pledgee, being a mere form by which to place the title in himself, is absolutely void and a nullity, and the rule requiring disaffirmance of a voidable sale within two years has no application. Muhlenberg v. City of Tacoma, 25 Wash. 36, 64 P. 925; Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1116; Morris v. East Side Ry. (C. C.) 95 F. 13; Norton v. Baxter, 41 Minn. 146, 42 N. W. 865, 4 L. R. A. 305, 16 Am. St. Rep. 679; Sharpe v. Bank, supra; Md. Fire Ins. Co. v. Dalrymple, 25 Md. 242, 89 Am. Dec. 779; Middlesex v. Minot, 4 Metc. (Mass.) 325. The two-year rule does not apply where the pledgor had no knowledge of the fact that the pledgee was the purchaser at the sale. Barnett v. Dowdy, 207 Ala. 641, 93 So. 638; Alexander v. Hill, 88 Ala. 487, 7 So. 238, 16 Am. St. Rep. 55. Constructive notice is not sufficient; there must be actual knowledge. Manning v. Heidelbach, 153 App. Div. 790, 138 N. Y. S. 750; 22 A. & E. Ency. L. 892. Ratification can only be predicated on full knowledge of all material facts. Herring v. Skaggs, 73 Ala.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

446; Moore v. Ensley, 112 Ala. 228, 20 So. 744; Clark v. Taylor & Co., 68 Ala. 453; Brown v. Bamberger, 110 Ala. 342, 20 So. 114; 1 A. & E. Ency. L. 1190. If constructive notice were sufficient, before the doctrine can apply, the party sought to be charged must be under a duty to investigate. Wilson v. Wall. 6 Wall. 83, 18 L. Ed. 727; U. S. v. Detroit L. Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499. In this case there could be no imputation of laches until the trustee, pledgee, by some act or declaration repudiated the trust, and notice of such repudiation was brought to the beneficiary, pledgor. MacMullan v. Kelly (Cal. App.) 124 P. 93; Id., 19 Cal. App. 700, 127 Pac. 819; Dyer v. Waters, 46 N. J. Eq. 484, 19 A. 129; Ruckman v. Cox, 63 W. Va. 74, 59 S. E. 760; Orr v. St. Louis Co., 291 Mo. 383, 236 S. W. 642; Allen v. Stewart, 214 Mass. 109, 100 N. E. 1092.

Rushton, Crenshaw & Rushton, of Montgomery, for appellees.

The writing evidencing the deposit as a pledge of the collateral security cannot be added to, varied, or contradicted by showing the nature of the transaction to be different from that expressed in the writing. 22 C. J. 1098; Thompson v. Glass, 136 Ala. 649, 33 So. 811; Corley v. Vizard, 203 Ala. 564, 84 So. 299; Forbes v. Taylor, 139 Ala. 286, 35 So. 855; Burroughs v. Pate, 166 Ala. 223, 51 So. 978; Able v. Gunter, 174 Ala. 389, 57 So. 464. An unauthorized purchase by the pledgee of property is not absolutely void, but subject to be set aside within a reasonable time. Barnett v. Dowdy, 207 Ala. 641, 93 So. 638; Gilmer v. Morris, 80 Ala. 78, 60 Am. Rep. 85; Boyett v. Hahn, 197 Ala. 439, 73 So. 79; Sharpe v. Bank, 87 Ala. 644, 7 So. 106; Bank v. McIntosh, 201 Ala. 649, 79 So. 121, L. R. A. 1918F, 353; Russell v. Garrett, 204 Ala. 98, 85 So. 420. Such sale is subject to be set aside at any time within two years after knowledge thereof. Barnett v. Dowdy, supra; Mobile Towing Co. v. Hartwell, 208 Ala. 421, 95 So. 191; Kelly Realty Co. v. McDavid, 211 Ala. 575, 100 So. 872. Means of knowledge are equivalent to knowledge. Cole v. B'ham. U. Ry., 143 Ala. 427, 39 So. 403; Peters M. L. Co. v. Hooper, 208 Ala. 324, 94 So. 606; Bank v. McIntosh, supra; Gamble v. Black Warrior Co., 172 Ala. 669, 55 So. 190; Alexander v. Fountain, 195 Ala. 3, 70 So. 669; Pepper v. George, 51 Ala. 194; Fowler v. Ala. I. & S. Co., 164 Ala. 419, 51 So. 393; Veitch v. Woodward Ir. Co., 200 Ala. 358, 76 So. 124; Smith v. Dallas Comp. Co., 195 Ala. 534, 70 So. 662; Brooks v. Greil Bros., 179 Ala. 459, 60 So. 387; Foster v. Mansfield R. Co., 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899; Pomeroy's Eq. Jur. §§ 917, 1147. One having a right of redemption or to disaffirm a transaction must act with diligence in asserting his right, where the property involved is fluctuating in value. Gilmer v. Morris, 80 Ala. 78, 60 Am. Rep. 85; Goree v. Clements, 94 Ala. 337, 10 So. 906; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328.

BOULDIN, J. This is a bill to disaffirm the sale of a pledge upon the ground that the pledgee, without authority, purchased at his own sale. The pledge consisted of first mortgage bonds, assigned as collateral security for debt. The bill further seeks to call the pledgee to account for the proceeds of these bonds, in excess of the debt secured, derived from a foreclosure of the bond mortgage, by suit in equity brought by the pledgee as owner of the bonds after his purchase at the sale. The pledgee, at the time of the sale, was acting administrator of the estate of a decedent to whom the original pledge was given, bid in the bonds as administrator, and made distribution of the funds derived on foreclosure, investing the shares of the heirs or legatees in real estate, taking title in their names. The bill further seeks to follow the funds into the lands, and to declare and enforce a trust thereon for the collection of complainants' demand.

The defense of laches is interposed. The bill was filed nearly four years after the sale of the bonds, and more than two years after the distribution of the fund by the administrator.

By amendment to the bill, and in avoidance of the defense of laches, it is averred that the pledgor did not learn or know the pledgee had undertaken to buy at the attempted sale of the bonds until about one month before the bill was filed.

The issue thus raised presents the primary, if not controlling, question in the cause.

The following principles are not the subject of debate in briefs:

[1-6] A pledge creates a form of trust. In equity the pledgee is a trustee to faithfully conserve and apply the proceeds of the pledge, first, to the payment of the debt secured, and, second, to account to the pledgor for any residue, or surrender the pledge if the debt is otherwise paid. In the absence of contract, or matters rendering it inequitable, the pledgee may, after default, sell the pledge at public auction after notice as required by statute. Code 1923, §§ 6745, 6746. Owing to his trust relation, and the conflicting interests of seller and purchaser, the pledgee assumes such antagonistic position in becoming a purchaser at his own sale without the consent of the pledgor, that equity will avoid the sale at the election of the pledgor without regard to any question of fairness in the conduct of the sale or the adequacy of price. Such sale is not void, but passes to the purchaser the title as in other cases, until the pledgor becomes the actor and disaffirms the sale. As a condition

to the relief, the pledgor must offer to do equity, which usually requires an offer to redeem by payment of the secured debt. In cases of collateral securities wherein the pledgee has, subsequent to his purchase, made collection thereof, the same result may be worked out by an accounting for the residue in equity due the pledgor after payment of the debt.

[7] Another condition to disaffirmance of sales wherein a mortgagee, pledgee, or other trustee, without authority, becomes a purchaser at his own sale, is that the party entitled to such relief shall exercise his election within a reasonable time—such time as shows that due diligence which is a condition to all relief in equity. In fixing such period of time in case of purchase by a mortgagee at his own sale under power of sale in the mortgage, two years has been adopted by analogy to the time for statutory redemption, and, by analogy, the same period is declared a reasonable time in case of a purchase by a pledgee at his own sale without authority.

[8] In the absence of averment and proof of good cause for further delay, a postponement beyond two years from the date of sale is laches which will bar the relief.

[9] Among good causes for delay is want of knowledge or notice of the facts which entitle the pledgor to his election to disaffirm, such as notice of the sale and purchase by the pledgee. Barnett v. Dowdy, 207 Ala. 641, 93 So. 638; Elrod v. Smith, 130 Ala. 212, 30 So. 420; Canty v. Bixler, 185 Ala. 109, 64 So. 583; Dozier v. Farrior, 187 Ala. 181, 65 So. 364; Alexander v. Hill, 88 Ala. 487, 7 So. 238, 16 Am. St. Rep. 55; Ezzell v. Watson, 83 Ala. 120, 3 So. 309; Sharpe v. National Bank, 87 Ala. 644, 7 So. 106; Cole v. Birmingham Union Ry. Co., 143 Ala. 427, 39 So. 403; Gilmer v. Morris, 80 Ala. 78, 60 Am. Rep. 85; Charles v. Dubose, 29 Ala. 367; Comer v. Sheehan, 74 Ala. 452; American F. L. Mortgage Co. v. Sewell, 92 Ala. 163, 9 So. 143, 13 L. R. A. 299; McCall v. Mash, 89 Ala. 487, 7 So. 770, 18 Am. St. Rep. 145; James v. James, 55 Ala. 525; Mobile T. & W. Co. v. Hartwell, 208 Ala. 420, 95 So. 191; Kelley Realty Co. v. McDavid, 211 Ala. 575, 100 So. 872; Randolph v. Vails, 180 Ala. 82, 60 So. 159.

[10] A serious argument is presented here as to what want of knowledge is essential to excuse delay beyond the regular period applicable to ordinary cases.

Appellants insist that to impute laches the pledgor must have actual knowledge of every fact upon which his right of election rests. The appellees insist that knowledge of facts which put him on inquiry, and which, by due diligence, would have discovered the whole facts, is sufficient.

We think this question has been long settled in this state. In James v. James, 55 Ala. 525, the case of a purchase of lands by a trustee, discussing the doctrine of laches, as applied to a bill by the beneficiary to impeach the sale, the court said:

"It is to this class of cases a court of equity applies most rigidly the maxim, that reasonable diligence must concur with conscience and good faith. * * * By distinct averments he must show why he was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry."

This rule was reasserted in virtually the same words in Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 329, 94 So. 606.

Whatever is sufficient to excite attention, and put the party on inquiry, is notice of everything to which the inquiry would lead. The rule comes down from Lord Camden:

"Nothing can call forth the activity of a court of equity but conscience, good faith and reasonable diligence." Cole v. Birmingham Union Ry. Co., 143 Ala. 427, 39 So. 403.

Again Lord Eldon said:

"The question always is, not what the plaintiff knew, but what, using due diligence, he ought to have known." Young v. Keighly, 16 Ves. 348.

"Laches or negligence is as fatal to relief as the actual absence of a matter of defense." Alder v. Van Kirk Land & Construction Co., 114 Ala. 551, 21 So. 490, 62 Am. St. Rep. 133; Alexander v. Fountain, 195 Ala. 3, 70 So. 669; Fowler v. Ala. Iron & Steel Co., 164 Ala. 414, 51 So. 393; Brooks v. Greil Bros. Co., 179 Ala. 459, 60 So. 387; Foster v. Mansfield R. Co., 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899; 21 C. J. p. 247.

Appellants rely upon Sharpe v. National Bank, 87 Ala. 644, 7 So. 106. That case involved the sale of bank stock at private sale without notice, and purchase by the bank. The pledgor, with knowledge that no notice of the sale was given, but without knowledge that the bank had become the purchaser, ratified the sale by accepting credit for the proceeds. The court held the sale without notice was inoperative to pass title, or dissolve the relation of pledgor and pledgee, and that the pledgor would not be held to a ratification without knowledge of all the facts. It has been said that a delay of two years raises a presumption of ratification.

It will be noted in the Sharpe Case the sale was void and not voidable. No title passed, as here. Again, there were two grounds of relief, and the pledgor knew of only one. Without going into a discussion of whether "ratification" or "waiver of right to disaffirm" is the more apt expression of the rule in cases of this sort, there is a manifest difference between ratification of a wholly inoperative sale, and a voidable sale. The former calls for no active steps to vacate. In the latter the title has passed, and he is required to become the actor, come into a court of equity seeking affirmative relief. There is no good reason for making a new

or different rule in this class of cases from those applicable everywhere, even in cases of fraud. The modern tendency is to shorten, rather than extend, the time. The status of the title to securities, which may fluctuate in value and need to be realized upon in business affairs, needs to be finally adjusted quite as soon as, if not sooner than, titles to lands.

We hold that a suit to disaffirm the sale of collaterals on the ground that the pledgee became the purchaser at his own sale, not brought within two years thereafter, is barred by laches, unless there is shown some circumstances excusing the delay; and where ignorance of the facts is the excuse, and the pledgor had knowledge of facts sufficient to put a vigilant person upon inquiry, which would have readily led to a knowledge of all the facts, his suit must fail.

[11] It clearly appears the sale was duly advertised; that many persons were present; that the administrator bid off the bonds for the estate at public auction. The bill does not aver, and it is not shown, that the pledgor did not have knowledge of the sale at or about the time. The complainant Charles Schuessler, the pledgor and owner of the bonds, limits his denial in evidence to knowledge of the name of the purchaser. He lived in another county of the state, but was president of Hayneville & Montgomery Railroad, whose bonds were being sold, had other business interests in Hayneville, the place of sale, and was frequently there up to about this time. Shortly after the sale a bill was filed by W. P. Russell, as administrator, to foreclose the mortgage on the railroad and collect the bonds; the bill showed the purchase and ownership of the bonds; a subpœna in that suit was served on Charles Schuessler, as president of the railroad company; a receiver was appointed; decree of foreclosure on the railroad entered; efforts made to sell it as a going concern; then a decree ordering the railroad discontinued and scrapped for purposes of sale; resistance by the citizens to that course; interference by the state in two proceedings; a veto by the United States Director General of Railroads. All these matters aroused much public interest and discussion. It appears Mr. Schuessler sided in sympathy with the opposition to scrapping the road. But finally it was scrapped and the rails and equipment sold in November, 1918, at prices enhanced by the war condition. Mr. Schuessler knew of this sale, the amount realized on the bonds, and was active in collecting the amount due him as owner of an interest in one bond not pledged.

Conceding that no one ever told Mr. Schuessler who bought the bonds, it seems wholly improbable that he did not know who was pushing the foreclosure proceedings in the manner stated. This was tantamount to actual knowledge of the ownership of the bonds as a result of the auction sale. We are clear to the conclusion he had such knowledge as put him on inquiry. The unexplained delay for more than 2½ years after all these occurrences, and after the distribution of the proceeds, constituted laches which we must hold a bar to a suit to disaffirm the sale of the bonds.

[12] Complainants claim an express parol trust was created at the time of making the pledge. The amendment to the bill, presenting this view, reads:

"And your orators aver that at the time of the making of said assignment hereto attached and marked 'Exhibit B,' the said W. P. Russell, now deceased, expressly agreed with the said Charles Schuessler that in the event it should at any time become necessary to foreclose the deed of trust securing the said bonds, or to sell said railroad property therein described, the said W. P. Russell would, in the event he realized on said thirty-eight bonds from such foreclosure or sale of said property, more than enough to pay the indebtedness due and secured by the pledge of bonds, account for and pay over to the said Charles Schuessler his pro rata portion of said proceeds, namely, that pro rata part of the proceeds as the number of bonds deposited by him with said W. P. Russell, deceased, as additional collateral, namely, twenty-four, bore to the total number of bonds so deposited with and held by the said W. P. Russell, deceased, as collateral security, namely, thirty-eight."

Exhibit B, referred to, is an assignment of the bonds in writing as collateral security for the debt, and nothing more.

The evidence in support of this phase of the bill is not quite clear and is somewhat at variance. Mr. Schuessler's testimony seems to be to the effect that Dr. Russell was to put up his money, something more than $12,000, secured by mortgage on the railroad, with 14 bonds owned by the railroad company, and 24 owned by Mr. Schuessler, its president, as collateral, with agreement that in the event of default, and the railroad being sold, they should share equally—Russell in proportion to the amount of his loan, and Schuessler in proportion to the amount of his bonds. To use his words:

"We were to share equally in it; in proportion, you know, to our amounts in there; his amount was twelve thousand dollars, mine twenty-four. I was to get twice as much as he would."

It clearly appears that the loan from Dr. Russell was negotiated by Mr. Schuessler to take up a debt at the Bank of La Fayette on which Mr. Schuessler was an indorser; that Dr. Russell only agreed to loan the money on being made safe. The entire transaction disclosed by the evidence disclaims any idea of putting in money against the investment theretofore made by Mr. Schuessler in bonds in default upon interest payments at the time. Mr. Davis, who participated in the negotiations, testifies, in effect, that in

the event of default, and the collection of the debt had to be enforced from the security, Mr. Schuessler should share in the proceeds after payment of the debt in the proportion of his bonds to the total bonds pledged. His summary of the transaction is:

"That in the event that the mortgage securing the bonds was foreclosed and a sufficient sum realized from the foreclosure to pay up the debt represented by the note, that any surplus from the proceeds of the foreclosure sale of it should be divided between Dr. Russell and Mr. Schuessler in proportion to the bonds which each held."

This version is not greatly variant from the contract resulting from the writings. It fully appears that what was said in this regard was by way of a proposition from Mr. Schuessler in the negotiations; that Dr. Russell took the matter under advisement, and later had the papers prepared to close the transaction, sent them to Mr. Schuessler at La Fayette, where he executed them on his own behalf and on behalf of the railroad company.

Without seeking to determine the exact import of these negotiations, nor whether it can be set up as an independent collateral agreement in parol, we find it rested merely in negotiation and in contemplation of reducing the transactions, involving important business interests, to writing; that they were reduced to writings which are presumed to represent the final concurrence of the minds of the parties. Corroborative of this is the testimony of Mr. McPherson, who held the papers as executor for Dr. Russell's estate for several years, that, in his interviews with Mr. Schuessler looking to the collection of the debt, it was only claimed that his bonds were up as collateral, and that Mr. Schuessler advised a sale of the bonds. Such advice was inconsistent with the idea that the bonds were to be held in trust for a foreclosure of the bond mortgage, and a full liquidation of the railroad company's affairs. Nowhere does it appear there was any limitation on the disposition of the collateral in any lawful manner to collect the debt.

[13] The case reduces itself to the question of a voidable sale, by reason of the purchase by the administrator, de bonis non, at his own sale. The argument advanced, that the sale was merely colorable, a gesture to prepare the way for a foreclosure suit, with no intention to change the relation of pledgor and pledgee, is not supported by the averments nor prayer of the bill; neither is there any attack in the pleadings on the ground of fraud or inequitable conduct in making a sale of the bonds under conditions existing at the time.

We may say the mere fact that the sale of the bonds was made on legal advice as a part of a proceeding to collect, placing the legal title in the estate, in view of probable expenses and delay in finally getting the money on them, cannot be said to be merely colorable, or fraudulent.

[14] The averment and proof that the purchase money bid at the sale of the bonds was not paid in and the bonds remained in the possession of the administrator in no way affect the equities of these complainants. The administrator was the proper custodian of bonds bid in for the estate. Whether the purchase on behalf of the estate should be approved, or whether the administrator should be required to take the bonds individually and pay in the amount of his bid was at the election of the heirs. Our conclusion eliminates all necessity to consider the much argued questions, viz: Whether the demand is subject to the statute of nonclaim; whether the special parol agreement was subject to the statute of frauds by reason of time for performance; and whether the absolute assignment of complainant Schuessler's right of action to complainant Jo. R. Persons, shortly before the bringing of the suit, is a good defense to a bill filed in their joint names.

The decree of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.